UNITED STATES v. KANSAS CITY, MO.
No. 13352.

Circuit Court of Appeals, Eighth Circuit.
Oct. 17, 1946.

460

Dwight D. Doty, Atty., Department of Justice, of Washington, D. C. (David L. Bazelon, Asst. Atty. Gen., of Washington, D. C., Morgan M. Moulder, Sp. Asst. to the U. S. Atty., of Kansas City, Mo., and Roger P. Marquis, Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

Benjamin M. Powers, Associate City Counselor, of Kansas City, Mo. (David M. Proctor, City Counselor, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This was a proceeding in condemnation in which the Government sought to acquire a perpetual easement for the construction and maintenance of an electric power transmission line over certain lands of the City of Kansas City, Missouri, for use in connection with the Sunflower Ordnance Works. The property over which the easement was sought is an improved park of 36.58 acres, and the easement to be acquired for this transmission line was described as included within the boundary lines of a strip of land 75 feet wide, being 37.5 feet on each side of the center line, and certain adjoining strips or parcels of land described with and as a part of said center line. This transmission line carried 115,000 volts on poles with the wires 13½ feet apart, the wires being carried on poles from 50 to 110 feet in height. The park had been acquired and improved by the city at a cost exceeding $1,000,000.

Commissioners were appointed under the procedure prescribed by the statutes of Missouri, and they made report fixing the value of the easement at $3500. Exceptions to this report were filed by the government and a trial de novo was had to a jury. There was testimony on behalf of the city that the total value of the land and improvements exceeded $1,000,000, and that the construction and maintenance of this power line damaged the park's value from 20 to 25 per cent. The testimony of the government was to the effect that the damage caused to the city's property was nominal. The jury returned a verdict of $10,000. Before the entry of judgment on this verdict the government moved for a new trial and in support of its motion filed affidavits of certain of the jurors for the purpose of showing that certain of them had privately viewed the premises and had received communication in the nature of a newspaper clipping disclosing the award of the commissioners and the alleged willingness of the United States to settle for that amount. The motion for new trial being overruled judgment was entered on the verdict and this appeal followed.

In seeking reversal, the government complains only of the action of the court in denying its motion for a new trial. It is stated in the government's brief that the question presented is whether the trial court abused its discretion in not granting a new trial because several of the jurors had a private view of the property condemned and one of the jurors read to certain other jurors from a newspaper which gave the amount of the commissioners' award and contained a statement that the government was willing to settle for that figure.

The appellee vigorously challenges the competency of affidavits of jurors to impeach their verdict and as the trial court filed no opinion in denying the motion for a new trial, we can not determine what, if any, weight the court gave to these affidavits in considering the motion for new trial. In this state of the record we must assume that the court considered only competent evidence. It should be noted that there is no contention that the jury was tampered with, nor that the appellee or its counsel had any knowledge of any misconduct on the part of any of the jurors in the trial of this proceeding. Before proceeding to an examination or consideration of the contents of the affidavits of five different jurors it may be stated as a general rule that the testimony or affidavits of jurors seeking to impeach their own verdict should not be considered on a motion to set aside the verdict on grounds of irregularity or misconduct on the part of the jury or some one or more of the panel. Barry v. Legler, 8 Cir., 39 F.2d 297; McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Stewart v. United States, 8 Cir.,

300 F. 769; Manhattan Oil Co. v. Mosby, 8 Cir., 72 F.2d 840; Evans v. Klusmeyer, 301 Mo. 352, 256 S.W. 1036; Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S.W.2d 47. The rule is well stated in 53 American Jurisprudence, Sec, 1105, pp. 769, 770, from which we quote as follows:

"The rule is founded on public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during the deliberations of the jury or afterward. It is to prevent overzealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. Further, if after being discharged and mingling with the public, the jurors are permitted to impeach verdicts which they rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath.

"Testimony of the jurors to impeach their own verdict is excluded not because it is irrelevant to the matter in issue, but because experience has shown that it is more likely to prevent than to promote the discovery of the truth. Hence, the affidavit of a juror cannot be admitted to show anything relating to what passed in the jury room during the investigation of the cause, or the effect of a colloquy between the court and a juror, or the arguments made to a juror by a fellow juryman. The rule that a verdict cannot be impeached by the testimony of a juror is generally adhered to where it is sought to impeach a verdict on grounds of misconduct on the part of the juror or his fellow jurors, despite apprehension expressed in many cases that such rule sometimes serves the cause of injustice."

There are certain refinements in the nature of exceptions recognized by some courts to the effect that affidavits of jurors may be received to show matters occurring during the trial, not falling within the legitimate issues of the case. But in our view of the record we need not pursue this line of reasoning because we think the showing was entirely inadequate to require the court in the exercise of its judicial discretion to grant appellant's motion. The unauthorized inspection by certain of the jurors during the progress of the trial, while improper, did not necessarily require the granting of a new trial. The misconduct here was not occasioned by the prevailing party, nor was it cognizant of it. In this connection it should be observed that there is no showing by affidavit or otherwise that the government and its counsel were ignorant of the fact of such misconduct until after the jury returned its verdict. Relief by way of a new trial may, of course, not be granted to one who with knowledge of the jurors' misconduct fails to make any objection, and when a motion for a new trial is urged on the ground of misconduct on the part of the jurors, it is incumbent upon the party making the motion to aver in his motion and show affirmatively that both he and his counsel were ignorant of the misconduct until after the return of the verdict. A litigant can not be permitted to speculate on the result of the jurors' misconduct.

We turn now to the nature of the contents of these affidavits. Juror Cary A. Colburn, in his affidavit, after reciting that on the first day of October, 1945, the jury was unable to agree upon a verdict, alleges, "That upon resumption of further deliberation in the jury room after 10 o'clock a. m. of the following day, some members, two or three, stated that they had visited and inspected the property involved and the transmission line located thereon, during that morning of October 2, etc." No jurors are named, nor is there a statement that any jurors in fact visited the property involved, but only that "two or three stated that they had visited" it. The jurors were, of course, not parties to this litigation and this was mere hearsay.

Juror Herbert E. Lake in his affidavit says, " * * * I heard one member of the jury, whose name was unknown to me, state that he had looked at and examined the property." Here again the indefiniteness is very striking and the testimony is mere hearsay.

The affidavits of the other jurors as to this question are of the same general character. There is no positive evidence that any named juror visited these premises. The affidavits are not only so indefinite and uncertain as to make it impossible to check or verify their truth but they are hearsay. So also are the affidavits with reference to the charge that the amount of the award of the commissioners was communicated to certain jurors. The affidavit of Herbert E. Lake on this phase of the issue is as follows: "That several members of the jury on the 2nd day of October, 1945, indicated that they were informed of the amount previously awarded by the commissioners and I was so informed, etc." Who the "several members" of the jury were, how they "indicated" that they were informed, or from whom, or how, or when they received such information is not indicated. One juror in his affidavit states that, "In the jury room the amount awarded by the commissioners appointed by the court was revealed and quoted from a newspaper as being $3500.00."

■ Misconduct of the jury, where not occasioned by the prevailing party, is ground for granting a new trial only when clearly prejudicial. Such a motion is addressed to the discretion of the trial court and ordinarily the court's action is not subject to review. Cochran v. United States, 8 Cir., 41 F.2d 193, 207; Emanuel v. Kansas City Title & Trust Co., 8 Cir., 127 F.2d 175, 176; Mill Owners Mutual Fire Ins. Co. v. Kelly, 8 Cir., 141 F.2d 763; Roberts v. United States, 4 Cir., 60 F.2d 871, 872. In Cochran v. United States, supra, during the trial certain of the jurors viewed some of the property involved in the controversy without the knowledge of the court or counsel for either party. In the course of the opinion we said [41 F.2d 207]:

"The matter was not brought to the attention of the court during the trial but was presented on motions for a new trial. It was addressed to the judicial discretion of the trial court, and in the exercise of such discretion the motions were denied. The ruling of the trial court on a motion for new trial is not reviewable on appeal. Ng Sing v. United States, 9 Cir., 8 F.2d 919, 922; Smith v. United States, 9 Cir., 231 F. 25; Rossi v. United States, 9 Cir., 278 F. 349."

In Emanuel v. Kansas City Title and Trust Company, supra [127 F.2d 176], it is said:

"The plaintiff asserts that the court erred in denying his motion for a new trial. Under the practice in the Federal courts, such a motion is addressed to the discretion of the trial court, and its action thereon is not subject to review."

In Roberts v. United States, supra [60 F. 2d 872], defendant was convicted of conspiracy to maintain a nuisance in violation of the National Prohibition Act. The motion for new trial was based on the claim that four of the jurors visited and viewed the premises where the crime was charged as having been committed. In the course of the opinion in that case it is said:

"The rule is well settled that an unauthorized view or inspection by members of the jury, while improper, is not ground for a new trial unless it appears that the verdict was affected thereby. 20 R.C.L. and cases cited. And it is equally well settled in the federal courts that whether a new trial will be granted for this reason is a matter resting in the sound discretion of the trial judge. * * * The exercise of such discretion will not be reviewed by an appellate court in the absence of abuse."

The alleged misconduct of the jury so far as it relates to a view of the premises by certain jurors was not a very serious matter. Had either of the parties requested that the jurors be permitted to view the premises, the request would doubtless have been granted as this is common practice in condemnation proceedings. The testimony described the property, the nature and extent of the improvements, the character and extent of the easement, and the structures placed upon it, in great detail, and there were also before the jury numerous photographs showing scenes before development of the park and after completion thereof, and photographs showing the transmission line as constructed, and other photographs showing scenes in the park. There was presumably nothing about the physical facts in connection with this property that the jury should not have known,

and it is scarcely conceivable that an inspection of the premises could have resulted in any prejudice to the government.

As to the alleged disclosure of the jury that the commissioners had awarded $3500 damages, it may be conceded that the amount of the award was not proper evidence, but that is not here the question for determination, but rather the question whether any prejudice resulted to the government by reason of this disclosure. The verdict was for $10,000. The fact that the commissioners awarded but $3500 would seem to be a fact prejudicial to the defendant rather than to the plaintiff. City of Cape Girardeau v. Hunze, 314 Mo. 438, 284 S.W. 471, 47 A.L.R. 25; City of St. Louis v. Worthington, 331 Mo. 182, 52 S.W.2d 1003; State ex rel. State Highway Commission v. Sharp, Mo.App., 62 S.W.2d 928; Norfolk & W. Ry. Co. v. Riggs, 6 Cir., 98 F.2d 612.

No prejudice having resulted from the alleged misconduct of the jury, we are clear that there was no abuse of discretion in denying the government's motion for a new trial. The judgment appealed from is therefore affirmed.