**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph Frank BRUMBAUGH, Defendant-Appellant.**

**No. 72–1356.**

United States Court of Appeals, Sixth Circuit.

Jan. 18, 1973.

William J. Dammarell, Cincinnati, Ohio, Court-appointed on brief, for defendant-appellant.

Jack B. Streepy, Asst. U. S. Atty., for plaintiff-appellee; Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, on brief.

Before PHILLIPS, Chief Judge, Mc-CREE, Circuit Judge, and CECIL, Senior Circuit Judge.

PER CURIAM.

This is an appeal by Joseph Frank Brumbaugh from his conviction on a charge of bank robbery in the United States District Court for the Northern District of Ohio, Eastern Division. Brumbaugh was indicted under Section 2113(a), (d), Title 18, U.S.C. for robbing the Polk State Bank at Polk, Ohio on May 28, 1970.

The evidence shows that the bank was in fact robbed, on the day indicated, by Brumbaugh and one William Hewlett. Brumbaugh does not deny that he participated in the robbery and that he did the specific acts in the robbery charged to him. His defense is an unusual one. He claims that he was a hostage of Hewlett and was under the complete dominance of him, acting under him at the point of a gun wielded by Hewlett. There

was substantial evidence to support the jury's verdict of guilty and we therefore do not have before us the question of the weight of the evidence.

Appellant's accomplice, William Hewlett, took the witness stand and testified on behalf of the government. He had previously pleaded guilty and was sentenced to eight years imprisonment. Appellant alleged that the witness had been in the hospital in 1967 for a mental condition. He had the hospital report in court and he claims that the trial judge erred in refusing to place it into the record of the trial and to permit the witness to be cross-examined on it. The trial judge held a voir dire examination and at the conclusion of the hearing, quoted the "Comments and Summary" as follows:

"This 24 year-old white male was admitted for treatment of depression reaction on 2/8/67. He was given 6 ECT unilateral on the right, with improvement and no undesirable effects, no memory difficulty. Feels better than he has felt in past year. Final diagnosis: Depressive reaction."

The court then ruled out any cross-examination by defense counsel relating to the mental condition of the witness. We do not find that the hospital report was ever actually offered into evidence at trial.

We have examined the record very carefully and conclude that there is no merit to the claim that the court erred with respect to this hospital report.

Another claim made on behalf of the appellant is that the court bailiff made improper remarks to a juror while he was out of the jury room during the progress of the jury's deliberation. The attorney for the defendant heard the remarks and reported the incident to the judge after the jury had returned its verdict. Shortly thereafter the juror, Donald W. Stump, was located, duly sworn by the Court and after some preliminary statements by the judge indicating that the juror was properly in the coffee shop with the bailiff, was examined as follows:

COURT

Q "During this time that you were with the bailiff, was there any conversation between you and him concerning the deliberations of the jury and the state of those deliberations?

A If I recall right, he asked me how it was going? And I answered, '9 to 3.'

Q Was there any other conversation between you concerning the matter I mentioned?

A He said 'For or against?' And I didn't say nothing, I didn't even answer him. And then he said—

Q Just one minute, please. Can you tell me, please, in terms of where you were when this conversation occurred?

A On the elevator—at the elevator door.

Q You say he said to you, 'For or against?' and you said you did not answer?

A I did not answer.

Q Then what further followed; any further conversation?

A Well, he said that, 'It's always some woman or something holding it up,' to that effect, or something like that, and I still did not answer. I didn't say no more.

Q Can you tell me whether this conversation in any way influenced you one way or the other as to your own participation in this case?

A No, it did not influence me in no way.

Q Did you report this to your fellow jurors, the fact that you had this conversation with the bailiff?

A No.

\*        \*        \*        \*        \*        \*

By the Court:

Q Just this final question, Mr. Stump: In the discharge of your

duties as juror, do you feel that in any way or any manner, the conversations that you have described had any effect at all on your own vote, or changing your vote, or in any way affecting your actions as a juror in this case?

A   No, sir.

Q   You say that without any hesitation?

A   That's right.

\*   \*   \*   \*   \*   \*

THE WITNESS:

Could I state how I voted up until I changed my mind?

MR. RHODES:

I think he has already answered.

By the Court:

When did you change your mind, at what point?

A   I changed my mind is when they—which would be on a Wednesday, I believe,—came past the bank, when Mr. Brumbaugh and Mr. Hewlett was in the car and found the bank was closed, and when they drove across streets and up streets and back streets, and when the man on the roof seen two people in the car. That's when I changed my mind that he had—

Q   Aided and abetted?

A   —aided and abetted. Up until then, I voted 'No' every time.

Q   You mean, is this as a result of testimony you heard read back—

A   Yes, when we—

Q   The last time? In other words, you did not change your mind until after you heard the testimony that was read just a few minutes ago?

A   Just a few minutes ago.

Q   Up until that time, then, you were voting for acquittal apparently, is that right?

A   Yes, voted 'No'. I voted, 'Not guilty, acquittal.'

Q   As a result of hearing this testimony, you then changed your mind and voted the other way?

A   That's right.

Q   Voted for conviction, is that right?

A   That's right."

The Bailiff denied the conversation as related by the juror. The trial judge apparently did not believe him. We therefore, in our consideration of the incident assume the correctness of the juror's account of it. We do not condone such conduct on the part of an officer in charge of a jury during its deliberation and neither did the trial judge.

He immediately summoned the juror into court and examined him under oath. We have set forth this examination in full. The judge concluded that the juror was not influenced by the conversation and we agree. The judge was in charge of the case throughout, he heard all of the testimony and he observed the demeanor of the jurors throughout the trial. He observed Mr. Stump during his examination, his demeanor, his manner of testifying and he was able to appraise the effect of the incident on him. This was a matter that was within the discretion of the judge and we conclude that he did not abuse his discretion.

In view of the unusual nature of the appellant's defense, his conduct before, during and after the robbery we think the verdict of the jury was fully justified.

Judgment affirmed.

McCREE, Circuit Judge, concurring.

I concur in the affirmance of the conviction but for a different reason. I would hold that prejudice inhered in the conduct of the bailiff, and that appellant is not required to show that he suffered prejudice in fact. Nevertheless, since his counsel elected to speculate about the jury's verdict and did not call this incident to the attention of the trial judge until after the rendition of the ver-

dict, I would not order a new trial because of the bailiff's misconduct.

In Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1968), the Supreme Court considered a claim of constitutional violation arising out of an unauthorized communication by a bailiff to a sequestered jury committed to his care. It said, " . . . the unauthorized conduct of the bailiff 'involves such a probability that prejudice will result that it is deemed inherently lacking in due process' . . . [and] 'it would be blinking reality not to recognize the extreme prejudice inherent' in such statements . . . ". This holding recognized the official character of the bailiff as an employee of the court as well as of the government. A jury committed to his care might easily conclude that a bailiff speaks for the judge. Certainly the statement here, "It's always some woman or something holding it up", can be understood only as a rebuke to the three holdouts, and the return of a unanimous verdict of guilty by a jury which had already deliberated overnight within a few hours after the remark suggests the effectiveness of the rebuke.

The majority opinion gives emphasis to the juror's assertion that his vote had not been affected by the comment and that he did not report this conversation to his fellow jurors. It would be remarkable if the juror admitted that he had been influenced because he would thereby admit that he violated his oath to consider only evidence admitted at the trial and the instructions of the court.

The same view may be confidently taken about his denial that he communicated the bailiff's comment to his fellows. It is significant that the juror did not report the incident to the judge as he might have been expected to do if he believed it to have been irregular. If he saw nothing irregular about it, it is not unlikely that he communicated it to his fellows.

In any event, the probability of prejudice is great but the difficulty of proving it is almost insurmountable, and I would not place this burden on a defendant who is not permitted to pierce the secrecy of jury room deliberations to try to sustain it.

I also observe that Parker v. Gladden, *supra,* was an appeal from a state court conviction and that the Supreme Court therein announced a constitutional rule concerning the right to a trial by an impartial jury and the right to confront witnesses. Here we consider a direct appeal from a conviction in a United States District Court and we should state unequivocally that no bailiff within this circuit may make any inquiry of the status of deliberations of any jury committed to his care and that he may make no communications to the jury except as expressly directed by the district judge. Such a prophylactic rule should be announced here under our superintending powers.

However, it is the general rule that misconduct in connection with the jury will not be grounds for a mistrial after a verdict is returned if defendant or his counsel knew of the misconduct prior to return of the verdict and did not advise the court. United States v. Carter, 433 F.2d 874 (10th Cir. 1970); United States v. Coduto, 284 F.2d 464 (7th Cir. 1960), cert. den., 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed.2d 192 (1961); United States v. Evett, 65 F.Supp. 151 (D.C.Cal.1946); Anno., 96 A.L.R. 530 (1935). Whether expressed as waiver or estoppel, this rule is sound and requires my concurrence in the result of the majority opinion.