**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald E. JONES, Defendant-Appellant.**

**No. 78–5509.**

United States Court of Appeals, Fifth Circuit.

June 20, 1979.

Rehearing and Rehearing En Banc Denied Aug. 6, 1979.

Neal R. Sonnett, Marc Cooper, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Bruce A. Zimet, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before AINSWORTH and VANCE, Circuit Judges, and BOOTLE,* District Judge.

BOOTLE, District Judge:

Convicted by a jury of multiple offenses relating to the operation of an illegal whiskey distillery and not challenging the sufficiency of the evidence, appellant urges two grounds for reversal: first, alleged error in denying his motion for new trial upon his showing that someone attempted to bribe a juror during trial and, second, alleged error in denying his motion to suppress evidence seized in a search made without a search warrant. For reasons following we affirm.

On August 1, 1975 a jury convicted the appellant, Donald E. Jones, on five counts of a seven count indictment arising out of his participation in the operation of an illegal whiskey distillery. The district court dismissed one count as duplicative of other counts and the jury acquitted appellant on one count. Appellant failed to appear for a hearing and sentencing on August 20, 1975 and was not apprehended until almost three years later. He was finally sentenced on June 23, 1978 and now appeals his conviction.

## I. Jury Tampering

Two days after the verdict, one of the jurors was contacted by appellant's wife, Debra Jones, and "a huge black man" who was later identified as Willie Lucas. Lucas solicited this juror's agreement that appellant had been "shanghaied" and refused to tell her how her address had been found. This juror, being upset, contacted the trial judge who on August 4, 1975 entered an order directing an investigation by the United States Attorney's office and the Bureau of Alcohol, Tobacco and Firearms. The court directed that all statements taken during the investigation be filed with the Clerk as part of the record. The positive identification of Willie Lucas as the "huge black man" is supplied in a report of an interview with Lucas so filed.

* District Judge of the Middle District of Georgia, sitting by designation.

On August 5, 1975, appellant submitted a motion to interview jurors pursuant to a local rule and filed in support thereof an affidavit dated August 4, 1975 by the same Willie Lucas which detailed post-verdict statements made by another juror, Arlie Crooms. Ms. Crooms was quoted as saying to him that she did not feel that the right verdict was given, that there was no proof that appellant owned the stills, and that she voted guilty only because of pressure from other jurors and her illness during the deliberations.

During the court ordered investigation, ATF agents interviewed all the jurors concerning possible approaches. When they interviewed Ms. Reboso, one of these jurors, they were told that juror Arlie Crooms had told her during the trial that she had been offered $1000 by someone to vote for acquittal. Subsequently, Ms. Crooms was interviewed and denied any improper approach. She later recanted and informed the ATF of a bribe offer by Willie Lucas who asked that she vote to acquit appellant.

The district court ordered a hearing on the matter for August 20, 1975. At the hearing, Ms. Crooms, Ms. Reboso, and the juror who was subjected to a post-verdict approach all testified. They were questioned by the Government attorney and by counsel for a co-defendant, B. J. Herndon, but no questions were asked by appellant's counsel. In fact, no evidence at all was submitted on behalf of appellant. The district court was informed that the Marshal had been unable to serve a subpoena on Willie Lucas and that the Marshal had been told that Lucas had decided to go to Nassau until August 24th. As stated previously, appellant also failed to appear and partici-

pate in this hearing despite the fact that by order of August 12, 1975 the district court had commanded his presence and despite the fact that at 10:30 A.M. on the morning of the hearing appellant and his wife were in his attorney's office at which time his attorney cautioned him to be present for the hearing at 1:00 P.M. The only explanation of his absence was made by his attorney as follows: "I spoke to Mrs. Debra Jones. She said that she left Donald a while ago and he was on his way down here. They came in separate cars. She made it; I don't know why he didn't make it." As above indicated, appellant's wife Debra (with separate counsel) was present at the hearing and, despite her participation in the post-verdict approach to a juror, was not called by appellant's counsel or by anyone as a witness. At the conclusion of the testimony, appellant's counsel made a motion which in substance was a motion for a new trial[1] and the district court denied it.

It is well established law that an improper communication such as a bribe offer to a juror during the trial raises a presumption of prejudice and that a new trial must be ordered unless the Government is able to bear its heavy burden of proving harmlessness. *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), *appeal after remand*, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956). Both appellant and the Government have concentrated their efforts primarily on the question of harmlessness raised in *Remmer*. The Government has asserted that both jurors, Ms. Reboso and Ms. Crooms showed by their testimony that the bribe offer had no

1. *Appellant's motion is quoted in full below:*
    I would like to make a Motion at this time on behalf of Mr. Donald Jones that based upon the testimony adduced here from the juror, Mrs. Crooms, and which is corroborated by Mrs. Reboso, and whom Mrs. Crooms corroborates, the fact that Mrs. Reboso had made mention she knew a particular witness and the fact that for two days, apparently, Mrs. Reboso had known the name of one of the defendants, and Mrs. Crooms said that she had reached a verdict,

apparently not by choice but by what she says was the—either the other understanding of Mrs. Reboso or some of the other jurors, that she would have to come back and she wasn't feeling well, and that she reached a verdict that did indicate what she felt to be her verdict; she did it because of compliance with other jurors, so on that basis and on the testimony adduced, I would make a motion on behalf of Don Jones to set aside the verdict as returned by this jury.

effect on their deliberation.[2] Appellant insists that harmlessness was not shown. Both sides have overlooked some fundamental issues inherent in the procedural context in which appellant's motion was made. Since these questions are controlling, this court need not reach the issue of harmlessness.

■ The jury's verdict was returned August 1, 1975. A timely motion for new trial was filed on August 8, 1975 and overruled on August 12, 1975. Appellant's motion which is the subject of this appeal was not made until August 20, 1975. After seven days from the date of the verdict, a motion for new trial cannot be entertained unless it is based on newly discovered evidence. Fed.R.Cr.P. 33. Appellant's motion was thus one which would have to be founded upon allegedly newly discovered evidence of an improper communication to a juror. This court and the Court of Appeals for the Sixth Circuit have recognized the propriety of categorizing such a motion as one for a new trial based upon newly discovered evidence. *Richardson v. United States*, 360 F.2d 366 (5th Cir. 1966); *Zachary v. United States*, 275 F.2d 793 (6th Cir. 1960). Both the Government and appellant have treated the issues in this case without recognizing the requirements and burdens placed on a defendant presenting such a motion.

■ In most new trial motions based on newly discovered evidence, the proffered evidence goes directly to proof of guilt or innocence. In such a motion the movant has a burden of showing (1) that the evidence was in fact discovered after the verdict, (2) that the movant's failure to learn of this evidence was not due to any lack of diligence on his part, (3) that the evidence is material and not merely cumulative or impeaching, and (4) that a new trial would probably result in an acquittal. *United States v. Bryant*, 563 F.2d 1227 (5th Cir. 1977); *United States v. Rachal*, 473 F.2d 1338 (5th Cir. 1973); *United States v. Hagerty*, 561 F.2d 1197 (5th Cir. 1977); *United States v. Schwartzenbaum*, 527 F.2d 249 (2d Cir. 1975); *United States v. Ellison*, 557 F.2d 128 (7th Cir. 1977). Admittedly, there are major distinctions in the substance of the evidence proffered by the appellant and that proffered in the above cited cases since appellant's evidence goes to the fairness of the trial rather than to the usual question of guilt or innocence. Regardless of those distinctions a motion for a new trial can not be based on newly discovered evidence unless that evidence is in fact unknown to the movant until after the verdict. The appellant had the burden of proving that this evidence was in fact newly discovered and that his failure to discover it prior to verdict was not due to his lack of diligence.[3] *Zachary v. United States, supra; see United*

---

2. Juror Crooms testified: "I didn't say anything to her (referring to Juror Reboso) because after she didn't call me, I didn't say anything to her because I had decided to forget about it." (Supp. R. 19). Juror Reboso testified: "I didn't think of it at all. I was having personal problems which were more important to me at the time. I sort of heard her and it went in one ear and out the other because my problems were major problems. I mean, I am being as sincere as I can be." (Supp. R. 38). In addition Juror Crooms argued for appellant's acquittal during jury deliberations and the jury did in fact acquit him of one count.

3. Another line of cases forcefully shows the relevance of a defendant's knowledge or lack of knowledge before the verdict of jury tampering. These cases teach that a defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that

the verdict was prejudicially influenced by that misconduct. *Oakes v. Howard*, 473 F.2d 672 (6th Cir. 1973); *United States v. Brumbaugh*, 471 F.2d 1128, 1130 (6th Cir. 1973) (McCree, J., concurring); *United States v. Carter*, 433 F.2d 874 (10th Cir. 1970); *Hall v. United States*, 396 F.2d 428 (10th Cir. 1968); *United States v. Coduto*, 284 F.2d 464 (7th Cir. 1960). The rule requiring a showing that the evidence of jury tampering is newly discovered and the rule of waiver established by the above cited cases are not aimed necessarily at discovering a defendant's complicity in the improper communication to the jury. The policies behind both rules fully encompass any knowledge possessed by the defendant before the verdict whether it be innocent or not. Such knowledge should be disclosed to the trial judge before the verdict so that an attempt can be made to salvage the trial by ridding the jury of prejudicial influences.

*States v. Ellison, supra.* It deserves note that in *Remmer*, it was established, by the Government's failure to deny, that "[n]either the judge nor the prosecutors informed the petitioner of the incident, and he and his counsel first learned of the matter by reading of it in the newspapers after the verdict." 347 U.S. at 228, 74 S.Ct. at 451, 98 L.Ed. at 655. Such a burden is eminently reasonable in view of the devastation which jury tampering could bring to our country's highly valued jury system. The burden of proving harmlessness placed on the Government by *Remmer* is difficult to bear. If all that need be shown by a defendant is the existence of tampering, an unscrupulous defendant could purposefully subvert the administration of justice by initiating such bribery attempts.

█ In this case appellant presented no evidence whatever on the issues of his lack of knowledge or his due diligence. In fact, his counsel did not even disclaim such knowledge on behalf of appellant. All that appellant has ever stated is that no evidence shows that appellant was "connected with" the bribe offer.[4] Thus appellant never satisfied his burden of proof as movant and the *Remmer* presumption does not come into play. The district court was correct in denying appellant's motion for new trial.

## II. Motion to Suppress

█ Appellant's other contention is that the district court should have suppressed evidence seized by ATF agents during a search conducted without a warrant. On April 12, 1974, local police officers responded to a reported shooting at premises leased by appellant. During their search for suspects or injured persons, these officers discovered appellant's illegal stills and other related paraphernalia. These local officers then called in ATF agents who seized certain evidence. This court agrees with the district court's conclusion[5] that the ATF agents' conduct was proper under the doctrine of *United States v. Green*, 474 F.2d 1385 (5th Cir. 1973) which was the then prevailing law of this circuit. *See, United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977).

Appellant contends that two recent Supreme Court cases, *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), and *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), invalidate *Green* and require that the evidence seized in the instant search be excluded. We conclude that *Tyler* and *Mincey* should not be applied retroactively on the facts of this case. *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *United States v. Montgomery*, 558 F.2d 311 (5th Cir. 1977).

AFFIRMED.

---

**4.** It is true that the evidence does not affirmatively establish the appellant's involvement in the bribe offer. However, our decision is grounded on the total lack of evidence disproving such involvement or knowledge. Though not a basis for our decision, it is interesting to note that the circumstances that are shown by the record tend to show rather than negate such knowledge or involvement. Willie Lucas, who offered the bribe, accompanied appellant's wife two days after the verdict in an attempt to solicit a juror to impeach the verdict. In furtherance of this endeavor, Lucas submitted an affidavit as support for appellant's motion to interview jurors. Events that came to light at trial also raise questions. It is clear that Debra Jones and a Government witness, with appellant's knowledge, negotiated an agreement to pay said witness a large sum if he would not testify. The witness claims that appellant offered a bribe; appellant describes these events as an extortion attempt by the witness. Unfortunately, we have no way of knowing what the jury thought of these contacts.

**5.** *United States v. Herndon*, 390 F.Supp. 1017 (S.D.Fla.1975).