**UNITED STATES of America, Appellee,**

v.

**Frank DEAN, Appellant.**

**No. 79–1919.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1981.

Decided Jan. 6, 1982.

Tim Watson, Newport, Ark., for appellant.

Kenneth Stoll, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges, en banc.

HENLEY, Circuit Judge.

This rehearing en banc follows the disposition by a panel of this court of an appeal from a judgment of the United States District Court for the Eastern District of Arkansas.[1]  *See United States v. Dean*, 647 F.2d 779 (8th Cir. 1981).  The district court had sentenced appellant Frank Dean to three years imprisonment and to a term of probation following his jury conviction on two counts of violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and 1963, and on thirty-six counts of violating the Travel Act, 18 U.S.C. § 1952.

The panel majority held (1) that appellant's conviction on two RICO counts did not violate the double jeopardy clause of the fifth amendment of the Constitution, (2) that the district judge did not err in admitting into evidence certain income tax returns of a business conducted by appellant, (3) that the jury could properly find that the office of County Judge was an "enterprise" as defined by the relevant RICO provision, 18 U.S.C. § 1961(4), and (4) that the appellant, by failing to object to a given jury instruction concerning the definition of the term "pattern of racketeering activity" could not prevail on that issue on appeal.

The panel majority nevertheless reversed the judgment of the district court, and remanded the case for a new trial, because it found that one of the members of the jury was in fact biased against the appellant, to such an extent that he did not in fact decide the case on the basis of an impartial consideration of the evidence.  The majority held that where actual bias of the type described has been shown, and where the defendant had knowledge of this bias prior to the jury's rendition of its verdict, but did not bring this knowledge to the attention of the trial judge until after the verdict had been

rendered, the defendant had nevertheless not waived his right to a new trial by reason of such bias.  It is this issue only with which we are here concerned.[2]

For reasons to be stated, we conclude that the appellant, by not bringing his knowledge of possible juror bias to the attention of the district court judge prior to the jury's rendition of its verdict, waived his right to a new trial based on such juror bias.  Accordingly, we affirm the judgment of the district court.

Dean's jury trial began July 9, 1979 and ended with the jury's rendition of its verdict on Friday, July 20, 1979, finding the defendant guilty on all counts.  On July 25, the attorney for the defendant, Mr. Pickens, filed a motion for extension of time within which to file a motion for new trial.  This motion was granted, a motion for new trial was subsequently filed, and a hearing on the motion was held on September 20, 1979.  The evidence adduced at the hearing showed that one of the jurors had, during the course of the trial, made statements out of court to the effect that the defendant was guilty and should and would be convicted.

The district judge granted the motion for new trial, stating:

> The statements made by the juror in this case go beyond a simple expression of opinion.  They evidence a settled disposition on the part of the juror to convict the defendant regardless of the evidence.  The juror's perfunctory testimony that he did not make up his mind until the last day is insufficient to overcome the clear showing of bias.

Investigations conducted subsequent to the order granting the new trial, however, disclosed that on or about July 17, 1979, while the trial was continuing, a note was handed to Mr. Pickens by a man who was unknown to him.  The note stated:

1.  The Honorable Richard S. Arnold, then United States District Judge for the Eastern District of Arkansas, presiding.

2.  It has been suggested that the district judge, by vacating the order for a new trial and reinstating the jury verdict, may have effectively

twice subjected the defendant to jeopardy in violation of the fifth amendment.  This issue, however, was neither raised nor argued by the appellant at trial, and it was not otherwise preserved for review here.  We therefore leave this issue for a more appropriate day.

There is a rumor that one of the Jurors told a Mr. Johnson, at Johnson's Cafe, on 49 highway, that Dean was "hung." This statement was made last week. The person that made this statement works at Dixon's Garage and is serving on the jury.

The government thereupon filed a motion for reconsideration of the September 26 order. A hearing on this motion was held on October 10, 1979. Although the record of that hearing is incomplete,[3] the evidence adduced at the hearing indicates that Mr. Pickens had in fact received the above quoted note during the course of the trial, and that the defendant was with him at the time of receipt of the note. The note was shown to the defendant by Mr. Pickens, and Mr. Pickens asked the defendant who had supplied the note. The defendant knew the informant as a result of various business dealings, but could not at that time recall the informant's name.[4] He told his attorney that he would find out who the informant was, but apparently took no further action on the matter between that time and the time that the jury rendered its verdict.

Mr. Pickens testified that he had received an anonymous telephone call on the Monday following the trial, and had been informed thereby that one of the jurors had been making improper statements during the course of the trial. Mr. Pickens also testified that it was this telephone call, and not the note, which had prompted him to investigate these allegations and to consider a motion for new trial. He testified that he had not relied on the note because he considered it to be merely a rumor.

The district judge found as a fact that the note had been handed to Mr. Pickens, that both defendant and Mr. Pickens knew about this allegation, that neither of them had brought it to the attention of the court

or sought any relief, and that there were two alternates on duty at all times. The district judge also found that the note, although it did not mention the juror's name, was sufficient to put the defendant on notice as to the identity of the juror. The district judge therefore vacated his order for a new trial and set the case for sentencing.

■ We observe initially that Mr. Pickens was handed the note as he was nearing the end of a rather lengthy and difficult trial. We also note that during the course of the trial Mr. Pickens was working out of a hotel room and presumably did not have the benefit of an assistant. And, we observe that the defendant appears to have failed to supply his attorney with the name of the informant. In these circumstances, it is perhaps understandable that Mr. Pickens and his client elected not to undertake what later proved to be a time consuming investigation of the allegations contained in the note.

But we also observe that the identity of the juror in question could have been easily ascertained from the content of the note and from a perusal of the jury list, and that defendant and his attorney at least could have raised the issue of juror bias by bringing the note promptly to the attention of the trial court if they had cared to do so. The trial judge then could have taken appropriate action such as granting a short continuance for further investigation, excusing the juror and seating an alternate, or granting a mistrial. In these circumstances, we are not prepared to overturn the district court's holding that the note should have been brought to the court's attention before the jury retired to consider its verdict.

3. The transcript of the October 10 proceeding has been lost. The parties could not agree on a statement of the proceeding, and the district court on May 8, 1980 issued an order providing a transcription of the court's own notes of the October 10 proceeding as a part of the record on appeal. *See* Fed.R.App.P. 10(c).

4. The defendant testified that he knew the man vaguely, that the informant was a member of the Quorum Court of Craighead County, and that they had had business conversations on the telephone while defendant was the County Judge of Poinsett County. The defendant also testified that he had not met the informant personally.

There remains the issue whether, assuming actual juror bias has been shown, the defendant's failure to bring the note to the court's attention can be held to be a waiver of alleged error.

The panel majority observed that there is a paucity of cases in the federal courts which have dealt with proven juror bias. It was assumed by the panel that this paucity resulted from the district courts' prompt orders for new trials in those cases where actual juror bias had been shown. We think it equally likely, however, that this paucity results from the fact that "actual" juror bias is difficult, if not impossible, to prove.

This difficulty in proving juror bias would appear to be, at least in part, the result of a tendency on the part of jurors not to admit that they are in fact prejudiced. "It would be remarkable if [a] juror admitted that he had been influenced because he would thereby admit that he violated his oath...." *United States v. Brumbaugh*, 471 F.2d 1128, 1131 (6th Cir.) (McCree, J., concurring), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2732, 37 L.Ed.2d 144 (1973).

One example of this tendency is found in *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). In *Parker*, a bailiff stated to one of the jurors, in the presence of others, " 'Oh, that wicked fellow ..., he is guilty'; and on another occasion said to another juror ..., 'If there is anything wrong [in finding petitioner guilty] the Supreme Court will correct it.' " *Id.* at 363–64, 87 S.Ct. at 469–70 (footnote omitted). The Supreme Court held that the petitioner had been denied a fair trial despite the testimony of ten of the jurors that they had not overheard the remark, and despite the fact that Oregon law permitted a verdict of guilty by ten affirmative votes. The Supreme Court instead found that the statements of the bailiff reached at least three of the jurors, and also that "the unauthorized conduct of the bailiff 'involves such a probability that prejudice will result that it is deemed inherently lacking in due process' .... '[I]t would be blinking reality

not to recognize the extreme prejudice inherent' in such statements." *Id.* at 365, 87 S.Ct. at 471 (citations omitted).

Similarly, in *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), it had come to the attention of the trial court that seven jurors had been seen reading newspapers containing articles that had mentioned certain evidence which had been held inadmissible at trial. The trial judge examined each of these jurors individually, and found that each of them had read at least one of the articles. Each of these jurors, however, testified that he would not be influenced by the articles, that he could decide the case only on the evidence in the record, and that he felt no prejudice against the petitioner as a result of reading the articles. The Supreme Court, apparently not believing this testimony, ordered a new trial.

> We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence.

*Id.* at 312–13, 79 S.Ct. at 1172–73.

We conclude that, generally speaking, post-verdict orders for new trials on account of suspected but unproven juror bias are, and should be, granted only where the probability for juror bias is so great that in fairness it cannot be ignored. Thus, we are inclined not to make a distinction between possible prejudice and actual prejudice when addressing the issue of waiver. *See Brumbaugh, supra*, 471 F.2d at 1130–31 (McCree, J., concurring).

We also observe that in those cases studied which have dealt with the timeliness of an objection to juror misconduct during trial, a finding of untimeliness has not been dependent on a consideration of the degree of prejudice resulting from the alleged misconduct. *See United States v. Sorenson*, 611 F.2d 701, 702 (8th Cir. 1979); *United*

States v. Jones, 597 F.2d 485, 488–89 (5th Cir. 1979), cert. denied, 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 728 (1980); United States v. Nance, 502 F.2d 615, 621 (8th Cir. 1974), cert. denied, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975); United States v. Hester, 489 F.2d 48, 50 (8th Cir. 1973); Oakes v. Howard, 473 F.2d 672, 674 (6th Cir.), cert. denied, 412 U.S. 952, 93 S.Ct. 3023, 37 L.Ed.2d 1006 (1973); United States v. Brumbaugh, 471 F.2d at 1130; United States v. Carter, 433 F.2d 874, 876 (10th Cir. 1970); Hall v. United States, 396 F.2d 428, 429 (10th Cir.), cert. denied, 393 U.S. 986, 89 S.Ct. 462, 21 L.Ed.2d 447 (1968); United States v. Coduto, 284 F.2d 464, 468 (7th Cir. 1960), cert. denied, 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed.2d 192 (1961); Zachary v. United States, 275 F.2d 793, 796–97 (6th Cir.), cert. denied, 364 U.S. 816, 81 S.Ct. 46, 5 L.Ed.2d 47 (1960); United States v. Kansas City, Mo., 157 F.2d 459, 461 (8th Cir. 1946); Langer v. United States, 76 F.2d 817, 827–28 (8th Cir. 1935); Pratt v. Commonwealth, 281 Ky. 628, 136 S.W.2d 1057, 1057–58 (1940); State v. Turley, 452 S.W.2d 65, 68–69 (Mo.1965); State v. Reeder, 394 S.W.2d 355, 357–58 (Mo.1965); State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 104–05 (1935); State v. Blair, 280 S.W.2d 687, 689 (Mo.App. 1955); Rippee v. State, 384 S.W.2d 717, 718 (Tex.Crim.App.1964).[5] See also Annot., 96 A.L.R. 530 (1935). This Annotation states:

The general rule is that misconduct on the part of anyone in connection with the jury after their retirement, although it be of a character which might vitiate the verdict if brought to the attention of the court by timely complaint, is not available after the return of the verdict, as a ground for a new trial or reversal, where it was known to the defendant or his counsel before the return of the verdict.

Id. But see United States v. Fries, 9 F.Cas. 826, 916–23 (C.C.D.Pa.1799) (No. 5126).

The cases generally have dealt with the timeliness issue as in United States v. Sorenson, where this court, without considering the degree of prejudice that might have been present, held that an objection based on known jury misconduct could not be raised for the first time after trial. 611 F.2d at 702. In United States v. Nance, supra, the misconduct alleged was the jurors' collective failure to observe the court's admonition not to discuss the case during the pendency of the trial. This court refused to remand the case on the ground of juror misconduct because the evidence showed that defense counsel knew about the misconduct prior to the jury's rendition of the verdict, and did not bring it to the court's attention until after the verdict was rendered. " 'A party may not stand idly by, watching the proceedings and allowing the Court to commit error of which he subse-

---

5. *United States v. Rattenni*, 480 F.2d 195 (2d Cir. 1973), is not helpful to the appellant. In *Rattenni*, a verdict had been returned against the defendant on a conspiracy charge, but the jury announced that it was deadlocked as to all other charges against the defendant. On the following morning, before deliberation on the remaining charges was resumed, one of the jurors announced that she had heard a prejudicial radio broadcast that morning. It was not until after this announcement that defense counsel learned that other prejudicial news had reached the jurors *before* they had returned their previous verdict of guilty on the conspiracy count. *Id.* at 196–97. The appeals court reversed the trial court's refusal to set aside the verdict on the conspiracy count, stating:

[We cannot] ... permit the judgment to stand because of the alleged dereliction of Rattenni's counsel. He stated without contradiction that he did not know about any of

the publicity until the forelady and the jurors revealed it.

*Id.* at 197.

Similarly, neither *Gomez v. United States*, 245 F.2d 344 (5th Cir.), *cert. denied*, 355 U.S. 863, 78 S.Ct. 95, 2 L.Ed.2d 68 (1957), nor *Ford v. United States*, 201 F.2d 300 (5th Cir. 1953), presents a factual situation similar to the one being considered here. The court in *Ford* stated:

Where the objection to a juror relates, not to actual prejudice or other fundamental incompetence, but to a statutory disqualification only, such disqualification is ordinarily waived by a failure to assert it until after verdict, *even though the facts which constitute the disqualification were not previously known to the defendants.*

*Id.* at 301 (emphasis supplied), *cited in Gomez, supra*, 245 F.2d at 346.

**734**

quently complains.'" 502 F.2d at 621, *quoting McNeely v. United States*, 353 F.2d 913, 917 (8th Cir. 1965). This court then cited lack of prejudice as an additional reason for our decision. There is no indication, however, that lack of timeliness, standing alone, was not a sufficient ground for our refusal to remand for a new trial on the issue of juror misconduct.[6]

■ In sum, we decline to make a distinction between possible prejudice and actual prejudice when addressing the issue of waiver. We conclude that our line of decisions, culminating in *United States v. Sorenson*, 611 F.2d 701, 702 (8th Cir. 1979), is controlling, and that appellant, by not bringing the question of juror misconduct to the attention of the trial court before the verdict was returned, thereby waived his right to a new trial.

The judgment of the district court is affirmed.

McMILLIAN, Circuit Judge, dissenting, with whom LAY, Chief Judge, and HEANEY, Circuit Judge, join.

I must respectfully dissent for the reasons discussed in my opinion for the panel majority, *United States v. Dean*, 647 F.2d 779, 782–85 (8th Cir. 1981). I would reverse and remand for a new trial.

---

6. In *United States v. Jones, supra*, a case involving an alleged attempt to bribe a juror, the Fifth Circuit treated the motion for new trial as one based on newly discovered evidence. However, the *Jones* court found that the defendant had not met his burden of showing due diligence and lack of knowledge, and decided the issue without considering the materiality of the newly discovered evidence or the probability that a new trial would result in acquittal. 597 F.2d at 488–89.