UNITED STATES of America, Plaintiff-Appellee,

v.

Cecil Leon RAMSEY, Defendant-Appellant.

No. 82–1120.

United States Court of Appeals, Tenth Circuit.

Jan. 20, 1984.

Rehearing Denied Feb 21, 1984.

James E. Edmondson, Muskogee, Okl., for defendant-appellant.

Gary L. Richardson, U.S. Atty., Muskogee, Mich. (Mark F. Green, Asst. U.S. Atty., Muskogee, Okl., with him on brief), for plaintiff-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Cecil Leon Ramsey appeals his conviction for conspiring to damage and destroy a building by means of an explosive, a violation of 18 U.S.C. § 371, and for destroying the building, a violation of 18 U.S.C. §§ 844(i) and 2.

The issues on appeal are (1) whether, under the circumstances of this case, gasoline constitutes an explosive within the meaning of 18 U.S.C. § 844(j); (2) whether the district court inadequately investigated suspected jury bias; and (3) whether the district court erred in denying the defendant's motion for a new trial on the basis of newly discovered evidence.

The defendant was convicted of violating 18 U.S.C. § 844(i), which then proscribed destroying, "by means of an explosive," [1] any building in interstate commerce. Section 844(j) defines "explosive," in pertinent part, as

"any chemical compounds, mechanical mixture, or device that contains any oxi-

---

1. The section was amended in 1982 to cover damage or destruction "by means of fire or an explosive." See Pub.L. No. 97–298 § 2, 96 Stat. 1319.

dizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion."

In the instant case, witness Floyd Jackson testified that the defendant hired him to break into and destroy a building occupied by Stone's Grocery Store in Wagoner County, Oklahoma, that the defendant instructed Jackson to break in the following night around midnight, and that the defendant suggested Jackson use gasoline to destroy the store. On the following night, Jackson, Tommy Rockwell, and Randall Morgan broke into the building and poured gasoline throughout it. The gasoline somehow ignited before they intended, destroying the store. Thus, the first issue we confront is whether gasoline spread throughout a building and ignited in this fashion constitutes an explosive within the meaning of section 844(j).

■ The defendant contends that gasoline constitutes an explosive within the meaning of section 844(j) only when the gasoline is placed in a container and ignited with a special incendiary device. He thus attempts to distinguish *United States v. Poulos,* 667 F.2d 939 (10th Cir.1982), in which we held that gasoline constitutes an explosive at least under some circumstances. More recently, however, in *United States v. Bunney,* 705 F.2d 378 (10th Cir. 1983), we held that gasoline poured into a room and ignited by a cigarette or matches constitutes an explosive as defined in 18 U.S.C. § 844(j). We do not perceive any characteristic distinguishing the case at bar from *Bunney.* We therefore conclude that the use of gasoline in the instant case constituted the use of an explosive within the meaning of 18 U.S.C. § 844(j).

The defendant's next contention is that the district court inadequately investigated alleged jury impropriety. The trial judge alone conducted voir dire. On the second day of trial, defense counsel heard and reported to the judge a rumor that juror Darlene Factor was the sister-in-law of a deputy sheriff or a member of the Wewoka, Oklahoma Police Department. The trial judge deferred action pending substantiation of the rumor. Later that day, a local sheriff told the government's attorney that juror Factor's brother-in-law was a member of the Wewoka Police Department. After learning this information, the defendant's attorneys several times requested permission to interview the juror. Each time the trial court deferred ruling on the request. However, after the close of evidence, but prior to any jury deliberations, the trial judge offered to question juror Factor in chambers regarding her relationship to any law enforcement personnel. He also raised the possibility of replacing her with an alternate if his interview with her should reveal that she was in fact related to a law enforcement officer. The defense counsel elected to proceed without the interview of the juror. However, after the jury rendered its verdict, the defendant moved for permission to interview the jury, which the court denied.

■ The defendant first contends that the trial court's voir dire was inadequate to explore the possibility of jury bias. The scope and depth of inquiry on voir dire are within the discretion of the trial judge. *United States v. Hopkinson,* 631 F.2d 665, 667 (10th Cir.), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1980). In the instant case, the trial judge asked the prospective jurors: "Are you or anyone in your immediate family connected with law enforcement"? In response, one juror disclosed that she had an uncle who was a highway patrolman, and another revealed that he had been a special deputy sheriff. Furthermore, the trial judge twice asked counsel whether they wished the judge to ask any other questions on voir dire, and they responded that they did not. In light of the clarity of the trial judge's specific question, the jurors' apparent understanding of it, and the defense counsel's failure to suggest additional questions, we conclude that the trial judge's voir dire was adequate to explore the possibility that prospective jurors were related to law enforce-

ment personnel. Accordingly, we find no abuse of the trial court's discretion in its conduct of voir dire.

■ The defendant also contends that the district court erred in denying the defendant's request to interview the jurors after the trial. Alternatively, the defendant argues that the trial court should have conducted its own post-verdict inquiry into the alleged failure of Darlene Factor to answer truthfully questions posed on voir dire. When a party's suggestion that a jury is biased is not frivolous, the district court ordinarily should undertake an adequate inquiry into the questions of whether the bias actually existed and whether it was prejudicial. *United States v. Corbin*, 590 F.2d 398, 400 (1st Cir.1979). *See Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir.1972). When the party is aware of the alleged misconduct during the trial, however, he or she may not raise the issue for the first time after trial. *United States v. Carter*, 433 F.2d 874, 876 (10th Cir.1970). *See also United States v. Dean*, 667 F.2d 729, 733–34 (8th Cir.), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982). In the case at bar, the trial judge offered to interview juror Factor before jury deliberations. Presumably, this inquiry would have revealed whether she was related to a police officer and whether that relationship might be prejudicial to the defendant. The defense attorneys, however, declined the district judge's offer. Under these circumstances, we hold that the defendant waived his right to prove the alleged misconduct. "A litigant can not be permitted to speculate on the result of the jurors' misconduct." *United States v. Kansas City, Mo.*, 157 F.2d 459, 461 (8th Cir.1946).

Finally, the defendant contends that the trial court erred when it failed to grant the defendant's motion for a new trial based upon newly discovered evidence of perjury of the government's principal witness, Floyd Jackson. Jackson had testified at trial that the defendant hired him to destroy Stone's Corner Grocery, but after trial Jackson executed an affidavit recanting his trial testimony, stating that the defendant had nothing to do with the destruction of the building. The affidavit states that Jackson burned down the store because the defendant owed him money. The affidavit was corroborated by another affidavit from Jackson's wife. The trial court denied the defendant's motion for a new trial without a hearing and without making any findings of fact.

■ The requirements for granting a new trial on the basis of recanted testimony are clear:

"The newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such as would probably produce an acquittal; and a new trial is not warranted by evidence which, with reasonable diligence, could not have been discovered and produced at trial."

*United States v. Allen*, 554 F.2d 398, 403 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977). Moreover, we will reverse the trial court's decision to deny a new trial only for a clear abuse of discretion. *United States v. Steel*, 458 F.2d 1164, 1166–67 (10th Cir.1972).

■ The recantation here is not merely impeaching or cumulative. When a witness recants his testimony, presumably he will testify as to the new version at a new trial. Thus, the recantation is substantial evidence. *Lindsey v. United States*, 368 F.2d 633, 636 (9th Cir.1966), *cert. denied*, 386 U.S. 1025, 87 S.Ct. 1383, 18 L.Ed.2d 465 (1967) (dictum); 8A *Moore's Federal Practice* § 33.05 (1983). The government does not seriously dispute the materiality of Jackson's recantation. Although his trial testimony was corroborated in small part by the testimony of coconspirator Randall Johnson, Jackson was clearly the government's chief witness as to the defendant's involvement in the conspiracy. Jackson was the only conspirator who allegedly spoke with or received money from the defendant; he was the only conspirator who knew the defendant by name. While the defendant's counsel had the opportunity to cross-examine and to impeach Jackson at trial, it is unrealistic to assume that the defense attorneys could have elicited the recantation at trial.

Thus, the defendant, exercising reasonable diligence, could not have discovered and produced this evidence at trial.

The only requirement of the four-part test articulated in *Allen* that may be in doubt is whether the new evidence would probably produce an acquittal.[2] If a jury heard and believed Jackson's new version of the events at a new trial, the result would almost surely be an acquittal. But whether a new trial should be ordered in the instant case turns on the credibility of Jackson's repudiation of his trial testimony. The evaluation of the credibility of witnesses is a matter for the trial court, not the appellate court. *United States v. Jackson,* 579 F.2d 553, 558 (10th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978). If the court finds that the recantation is false, it need not order a new trial. *See United States v. Briola,* 465 F.2d 1018, 1022 (10th Cir.1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688 (1973); *United States v. Steel,* 458 F.2d 1164, 1167 (10th Cir.1972). We are mindful that recanted testimony is properly viewed with suspicion, *United States v. Ahern,* 612 F.2d 507, 509 (10th Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981), and we note that the government's brief in this Court alleges that Jackson has now withdrawn his recantation. Appellee's Brief at 8. Nevertheless, the trial court here simply denied the motion for a new trial without a hearing and without making written findings. Thus, we cannot discern from the record whether or how the trial judge evaluated the credibility of Jackson's recantation. Under these circumstances, we must vacate and remand the case to the district court to make the necessary findings, so that we will have some basis for evaluating its conclusion. *See United States v. Wallace,* 528 F.2d 863, 866 (4th Cir.1976).

The judgment of the district court is VACATED and REMANDED for further proceedings consistent with this opinion.

McKAY, Circuit Judge, concurring in part and dissenting in part:

I am in agreement with the court's disposition of this case and with its opinion. However, in connection with the problem of recanted testimony, I concur in part and dissent in part.

In cases where a critical witness' testimony is probably determinative of the outcome of the case, and he himself has executed an affidavit recanting that testimony, the danger of a miscarriage of justice is so great that, as the court here has indicated, the trial court must at least set forth reasons for denying a motion for new trial based on that recantation. The difficulty I have is that we have not given the trial court any directions for the exercise of its discretion in denying a new trial. Nor do I think the cases or commentaries give adequate guidance for the assessment of the effects the recantation should have on a trial judge's evaluation of a motion for a new trial. We have provided no guidance in this opinion and therefore give the trial court an impossible task.

Numerous cases suggest that the trial court, having heard the first trial and observed the witness' testimony, may simply decide the motion for new trial based on recanted testimony on the basis of the affidavits alone without a hearing. *United States v. Nace,* 561 F.2d 763, 772 (9th Cir. 1977); *United States v. Ward,* 544 F.2d 975, 976–77 (8th Cir.1976); *United States v. Colacurcio,* 499 F.2d 1401, 1406 n. 7 (9th Cir. 1974); *United States v. Hoffa,* 382 F.2d 856, 864–65 (6th Cir.1967), *cert. denied,* 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968). As I understand it, this court has not adopted that position. If, however, it has, then a remand for findings serves no useful purpose. If the trial court reviewed the affidavits and denied the motion for a new trial, it obviously rejected the recantation as be-

---

**2.** This Court generally has adhered to the so-called *Berry* test—that the newly discovered evidence must be such that it would probably produce an acquittal—in cases involving recanted testimony as well as in cases involving other newly discovered evidence. *See United*

*States v. Jackson,* 579 F.2d 553, 557 (10th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978). The defendant does not question the propriety of applying the *Berry* test to this case.

ing false. A remand for a hearing to have him state that seems entirely unnecessary.

Where, as here, the recanting affidavit is from the critical witness in the case, great danger lies in letting the verdict stand even if the recantation is subsequently recanted. *See* Government's allegation, unsupported by the record, Government's Brief at 8. The danger of an erroneous conviction based on such unreliable testimony is great indeed. As the Supreme Court has indicated, "[t]he dignity of the United States government will not permit the conviction of any person on tainted testimony." *Mesarosh v. United States,* 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956).

In addition to the recantation, there are independent reasons for the court to be suspicious of the testimony of this witness at the trial. As in so many cases we are now seeing, this government witness was admittedly guilty of the crime he accused the defendant of committing at trial. His motivation to testify falsely in the first instance was extreme. As he so colorfully put it in his affidavit, "[m]y appointed lawyer told me I could be given the needle or a long time in the pen unless I went along with the federal lawyers and investigators." Appellant's Opening Brief at 7. When dealing with this kind of witness, oft-repeated dictum that recanted testimony is generally looked upon with downright suspicion, *see, e.g., United States v. Ahern,* 612 F.2d 507 (10th Cir.1980), seems as inapplicable as it is unjustified in the cases which recite it. The temptation to perjure in the first instance to satisfy the government, which controls future prosecution and sentencing, is so great that the suspicion of original testimony ought at least to have equal dignity with the suspicion of recanted testimony. The fact that the witness was subject to the penalties of perjury is his original testimony is not equal in weight to the fact that in the recanted testimony he has explicitly made the government's case against him if it chooses to prosecute him for perjury.

I believe that where a critical witness who testifies for the government—while the government still controls his prosecution and sentencing for the very things about which he testifies at trial—subsequently recants, the trial court should look to something more than the mere fact that there is a conflict between the original testimony and the recantation before merely opting to disbelieve the recantation. Before a conviction under such circumstances should be permitted to stand, the trial court should at least set forth some articulable reason other than the fact that the witness has taken two opposing positions for failing to grant a new trial. If those reasons include the possibility that the witness has come under some particular pressure to give the recanting affidavit, that must be supported by sufficient testimony at a hearing.

At the very least, I would not tell the trial court to make findings without indicating to the trial court what the criteria are which should guide its exercise of discretion. On the cold record, the recanting affidavit seems as believable as the trial testimony in its reasons and internal consistency. If, then, we do not tell the trial court that its findings have to demonstrate some additional factor for rejecting the recantation, we have given the trial court an impossible task.