**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven Robert BOLINGER, Robert Jerome McTeer, Bruce Hayes Munro, Juan Carlos de la Fuente, Defendants–Appellants.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan Carlos de la FUENTE, Defendant–Appellant (Two Cases).**

**Nos. 84–3528, 84–3751 and 86–3860.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 8, 1988.

---

John C. Wilkins, III, Bartow, Fla., for Bolinger.

Elizabeth L. White, Jacksonville, Fla., for McTeer.

Dan R. Warren, Daytona Beach, Fla., for Munro.

Bruce Hinshelwood, Asst. U.S. Atty., Orlando, Fla., for U.S.

Bernard H. Dempsey, Jr., Manuel Socias, Orlando, Fla., Mark J. Kadish, Kadish and Kadish, Alan J. Baverman, Atlanta, Ga., for de la Fuente.

## ON PETITION FOR REHEARING

(Opinion August 15, 1986, 11 Cir., 796 F.2d 1394)

Before RONEY and CLARK, Circuit Judges, and FAIRCHILD *, Senior Circuit Judge.

PER CURIAM:

Appellant Bolinger's petition for rehearing is DENIED. In light of allegations contained in appellant de la Fuente's petition for rehearing, we hereby delete section III A. of our prior opinion, 796 F.2d 1394, 1400–01, and insert in its place the following:

### III. ANALYSIS

A. . *Juror Misconduct (de la Fuente)*

Appellant de la Fuente raises two distinct claims of juror misconduct. First, that the evidence of juror Hunter's actual bias against de la Fuente requires that we reverse the denial of the motion for a new trial. Second, that juror Hunter's proliferation of extrinsic evidence to several other jurors was so inherently prejudicial that the district court erred in requiring a showing of actual prejudice and should have presumed prejudice to follow from the misconduct. We reject each of these claims.

### (1) Juror Bias.

■ The Sixth Amendment guarantees the right to trial by an impartial jury. An impartial jury is "capable and willing to decide the case solely on the evidence

before it." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). A defendant must be given a new trial where he or she " 'demonstrate[s] that a juror failed to answer honestly a material question on voir dire and then further show[s] that a correct response would have provided a valid basis for cause.' " *United States v. Perkins*, 748 F.2d 1519, 1531 (11th Cir.1984) (quoting *McDonough Power Eqpt., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984)). De la Fuente claims that juror Hunter expressed an opinion as to de la Fuente's guilt before all of the evidence was presented. In addition, it is claimed that Hunter lied when asked if he had been exposed to publicity and other extrinsic information relevant to this case. Because we find that de la Fuente waived his juror bias claim by failing to bring evidence of Hunter's misconduct to the court's attention before the jury rendered its verdict, we need not discuss the merits of this claim.

De la Fuente's attorney first learned of juror Hunter's bias when he received a telephone call from Andrew Harris, Jr., on Saturday, June 10, 1984. Record, Vol. 68 at 152–53, 155. Harris told the attorney that Hunter had discussed the case with Harris' aunt (Hunter's neighbor) during the trial and Hunter had stated his belief that de la Fuente was guilty. Saturday, June 10, fell in the midst of the jury's deliberations. The jury did not return its verdict until Wednesday, June 13. Yet, the attorney did not notify the court of possible juror taint until he filed de la Fuente's motion for new trial on June 28, 1984.

■ Our cases teach that "a defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct." *United States v. Jones*, 597

---

* Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

F.2d 485, 588 n. 3 (5th Cir.1979).[1] In *Jones,* the court explained that a motion for new trial based on juror misconduct is a form of new trial motion for newly discovered evidence. *Id.* at 488. As such, the motion must be supported by proof that the evidence of misconduct was not discovered until after the verdict was returned. In the particular context of juror misconduct, this rule serves to ensure that the trial court is given every available opportunity to attempt to salvage the trial by ridding the jury of prejudicial influences. Thus, where the defendant or defense counsel knows of juror misconduct or bias before the verdict is returned but fails to share this knowledge with the court until after the verdict is announced, the misconduct may not be raised as a ground for a new trial. *Id.; see also United States v. Edwards,* 696 F.2d 1277, 1282 (11th Cir. 1983), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1984) (no abuse of discretion in refusing to interrogate jury about alleged juror misconduct where defendant waited to hear the verdict before contesting jury's impartiality); *United States v. Dean,* 667 F.2d 729, 732–34 (8th Cir.1982) (en banc) (untimely notification of juror misconduct waives right to new trial even where actual prejudice can be shown).

Although the June 10 telephone call did not disclose the full extent of Hunter's misconduct,[2] enough information was relayed that counsel should have contacted the district court for instructions while counsel continued his investigation. It is up to the court, and not the parties, to determine the appropriate response when evidence of juror misconduct is discovered. *See United States v. Caldwell,* 776 F.2d 989, 997 (11th Cir. 1985); *United States v. Carrodeguas,* 747 F.2d 1390, 1395 (11th Cir.1984). De la Fuente's decision to gamble on the jury rather than inform the court of the problem in time to allow the court to determine if corrective action was possible prior to verdict is fatal to his claims regarding juror Hunter. We therefore affirm the denial of de la Fuente's motion for a new trial on the grounds of juror bias.

#### (2) Extrinsic evidence.

Juror exposure to extrinsic evidence mandates a new trial only if the evidence poses a reasonable possibility of prejudice to the defendant. *Perkins,* 748 F.2d at 1533. The government bears the burden of rebutting the presumption of prejudice which attaches when it has been shown that the jury was exposed to extrinsic evidence. *Id.*[3]

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

2. After receiving the telephone call, counsel sent two paralegals to Lake Helen, Florida, to obtain affidavits from Harris and other potential witnesses to Hunter's misconduct. In his affidavit, Harris stated that Hunter told Harris' aunt that de la Fuente had been arrested in possession of cash. At the post-trial hearing Harris testified (R. 19–158): "Q. And it is your specific recollection that it was while the jury was in session in this case that you first spoke to Mr. Dempsey on the telephone about what you set out in that affidavit? A. Yes." The reference to cash, which had been suppressed as evidence at trial and referenced only in newspaper articles, led the trial court to grant de la Fuente's counsel permission to interview jurors and inquire concerning statements made by juror Hunter re-

garding suppressed evidence. The paralegals apparently did not return to Orlando with the affidavit until after the jury had announced its verdict. De la Fuente's petition for rehearing at 6.

3. Unlike the juror bias claim, de la Fuente's extrinsic evidence claim was waived only to the extent he claims juror Hunter was influenced by the extrinsic information. The only evidence available to de la Fuente's counsel before the jury returned its verdict was that juror *Hunter* was biased. Counsel's pre-verdict knowledge of Hunter's possible bias precludes del la Fuente from arguing that exposure to extrinsic evidence was a cause of that bias. Counsel did not receive information as to the introduction of extrinsic evidence *into the jury room* until after the verdict was returned. As a result, his claim that the other jurors were affected by Hunter's dissemination of extrinsic information was not waived.

De la Fuente offered sufficient evidence of jury contamination to justify employing the rebuttable presumption of prejudice. At the post-trial hearing into juror misconduct, juror Hodges testified that juror Hunter referred to a newspaper article in the presence of approximately nine other jurors. Hodges was told that the article reported a raid on de la Fuente's home or place of business during which several hundred thousand dollars had been found in a mattress. Hodges testified that Hunter repeated the statement several times and that, each time, other jurors told him not to discuss the article. Seven other jurors testified that Hunter mentioned the article, although they agreed that Hunter's comments were cut short by their protests.

■ The district court found that only juror Hodges overheard Hunter's comments regarding the substance of the newspaper articles. The other jurors heard only Hunter's reference to the article itself, and they testified that the article was not discussed during the jury's deliberations. The district court denied de la Fuente's two motions for new trial on the ground that the evidence against de la Fuente was so overwhelming that the introduction of extrinsic evidence could not have been prejudicial. We agree.

■ Initially, we note that the jurors' testimony that the extrinsic information was harmless is not controlling. *See United States v. Williams*, 568 F.2d 464, 470–71 (5th Cir.1978). The district court may consider such testimony, but it must also consider other factors such as the nature of the extrinsic evidence and the strength of the evidence properly presented by the government against the defendant. "There is no magic formula that the trial court must follow in conducting the inquiry. Rather, it must use whatever inquisitorial tools are necessary and appropriate to determine whether there was a 'reasonable possibility' of prejudice." *United States v. Savage*, 701 F.2d 867, 871 (11th Cir.1983).

In *Williams*, several jurors heard on a television news report that the defendant had been convicted in a prior trial on the same offenses but that a new trial had been granted by the court. Our predecessor court found that the introduction of this highly prejudicial evidence into the jury room required a new trial notwithstanding the juror's testimony that they could disregard the television newscast. "The effect of exposure to extrajudicial reports on a juror's deliberations may be substantial even though it is not perceived by the juror himself, and a juror's good faith cannot counter this effect." 568 F.2d at 471. In the facts of that case, the jurors' statements were "insufficient to obviate the problems of fairness caused by the news report." *Id.*

Given the facts and circumstances of this case, juror Hunter's dissemination of information regarding money allegedly found under de la Fuente's mattress does not require a new trial. This information, although it was suppressed as evidence by the district court, is not nearly as inflammatory as the information involved in *Williams*. As such, its dissemination does not, as a matter of law, obviate the importance of the jurors' testimony that the information had no effect on their verdict. The district court heard this testimony, and its evaluation of this testimony is entitled to great weight. *See Savage*, 701 F.2d at 871.

■ Furthermore, the district court's finding that the introduction of extrinsic evidence was harmless is bolstered by the strength of the evidence properly introduced against de la Fuente. The government presented detailed eyewitness testimony by Burroughs and other members of the aborted criminal scheme indicating that de la Fuente was in fact the mastermind of the scheme. This evidence, along with the jurors' testimony discussed above, amply supports the district court's conclusion that the introduction of extrinsic evidence in this case was harmless beyond a reasonable doubt.

■ Bolinger and McTeer argue that the juror misconduct requires reversal of

their convictions. As there is no evidence that Hunter or any other juror was biased against them or learned any extrinsic information relevant to their cases, we affirm their convictions. *See United States v. Brantley,* 733 F.2d 1429, 1440–41 (11th Cir.1984).

Appellant de la Fuente's petition for rehearing is hereby DENIED.