United States Court of Appeals,

Eleventh Circuit.

No. 94-6304.

Josephine HARDIN, individually; Josephine Hardin, as Administratrix of the Estate of Edie L. Houseal, Deceased, Plaintiffs-Appellees,

v.

James HAYES, Sheriff of Etowah County; Robert Hitt, Chairman of Etowah County Commission; Marion T. Smith; Billy Ray McKee, Commissioner of Etowah County; Jesse F. Burns, Commissioner of Etowah County; W.A. Lutes, Commissioner of Etowah County; Lawrence Presley; Billy Ray Williams; John Morris; John Raley, Defendants,

Gadsden, City of, a Municipal Corporation, Defendant-Appellant,

Birmingham, City of; R.L. Webb; Julius Walker, Intervenors,

United States of America, Amicus.

May 19, 1995.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-89-C-2164-M) U.W. Clemon, Judge.

Before KRAVITCH, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

The City of Gadsden, Alabama (the "City"), appeals from a jury verdict in favor of Josephine Hardin, as personal representative for the estate of Edie L. Houseal, a jail inmate who died while incarcerated by the City. In the second trial in this case, the jury found in favor of Houseal's estate on both the 42 U.S.C. § 1983 claim (alleging deliberate indifference to Houseal's need for mental health treatment) and the pendent wrongful death claim (alleging negligence by City employees). Because we conclude that the district court abused its discretion in ordering a new trial after the first trial resulted in a verdict for the City, we

REVERSE and REMAND with instructions that the first verdict be reinstated.

## I.

Gadsden City Police[1] arrested Edie Houseal on May 29, 1989, after she called them claiming that her life was in danger. On the way to the City jail, Houseal kicked and dented the rear door of the squad car, screaming, somewhat incoherently, that someone was preparing to kill her. Houseal was similarly disruptive throughout her confinement, and periodically repeated her perception of a continuing threat to her life.

Because the City jail was being renovated, Houseal spent her days at the Etowah County jail and her nights at the City jail. On May 30, while at the County jail, she was observed by one of the other inmates smearing vomit on her own face; the inmate testified that he reported this incident to the County jailers. Later that afternoon, Houseal began to beat her head against the bars of her cell. When the jail personnel arrived, Houseal grabbed a pen from one of the jailers, stabbed the jailer in the hand, and stabbed herself in the neck. City officers transported Houseal to a hospital. Several of the officers told the emergency room physician that in view of Houseal's behavior, they thought that she did not belong in jail, and inquired if he could arrange for a psychiatric examination. The physician's response was noncommittal, and Houseal was released from the hospital

---

[1] The tragic facts of this case were detailed, at the summary judgment stage, in *Hardin v. Hayes*, 957 F.2d 845 (11th Cir.1992); we thus focus primarily on the additional evidence adduced at the first trial.

immediately after treatment and returned to the County jail.

On May 31, City Police Chief John Morris was apprised of the pen-stabbing incident and ordered an immediate evaluation of Houseal by a mental health professional. The evaluation, however, was not arranged until the following morning, when Houseal was interviewed by William Owens, a social worker with the Cherokee/Etowah/DeCalb Mental Health Center. After Houseal denied that she had ever been to a mental hospital, refused to consent to voluntary commitment to a mental hospital, and declined to answer further questions, Owens left to begin the paperwork necessary for an involuntary commitment.

Upon Owens's departure, Houseal flooded her cell by running water into a stopped-up sink. She was observed sticking her head in the water and repeatedly falling down. One of the inmates also may have seen her consuming fecal matter. After County Sheriff James Hayes and County Chief Correctional Officer John Raley observed Houseal pacing in her flooded cell, Hayes ordered Raley to call the City and have Houseal removed. The City officer who took the call testified that Raley told him that the County jailers were unwilling to reenter the cell until City officers came. Before City officers arrived, however, Houseal collapsed in her cell and died. An autopsy revealed the cause of death to be asphyxia due to a small bar of soap lodged in Houseal's hypopharynx; a smaller bar of soap was found in her stomach. The Alabama State Medical examiner concluded that Houseal's death was accidental.

Houseal's estate sued the City and a number of City and County officials under § 1983 and the Alabama wrongful death statute.

Summary judgment was granted in favor of most of the individual defendants on the § 1983 claim, *see Hardin,* 957 F.2d at 848-51; the case then went to trial on both claims against the City and Chief Morris in his individual capacity, and on the state-law claim against Sheriff Hayes and Chief Raley. Hayes and Raley settled during the first day of trial. The district court granted judgment as a matter of law in favor of Morris at the close of the plaintiff's case; the jury then returned a verdict in favor of the City on both counts. The special interrogatory form indicated the jury's findings that (i) the City was not "deliberately indifferent to known serious medical needs of the decedent" and that (ii) the City was not "neglectful or careless in its treatment of the decedent." The district court, on its own motion, thereafter ordered a new trial.[2] The second trial resulted in verdicts for the plaintiff on both counts.

## II.

### A.

The trial court indicated, in both its oral and written orders, that the new trial was being granted because the "jury's verdict [was] contrary to the great weight of the evidence." *See* Fed.R.Civ.P. 59(d) (if new trial granted *sua sponte,* "the court shall specify in the order the grounds therefor"). Four months after entering the written new trial order, however, the district

---

[2]The City could not appeal this interlocutory order. *See Pate v. Seaboard R.R.,* 819 F.2d 1074, 1077 n. 4 (11th Cir.1987) (Rule 59 orders not separately appealable); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2818 at 113-14 & n. 37 (1973 & Supp.1994) (grant of new trial not appealable).

court made the following observations in a "Memorandum of Opinion Denying Motion for Recusal":

> [This judge] had sat through the trial, heard and reviewed all of the evidence; and, equally importantly, he had observed the demeanor of each of the jurors throughout the trial. He also had observed the facial expressions and reactions of several of the jurors, including the one later selected as foreman, as the black witnesses testified and as one of plaintiff's counsel, Mr. Shipman, spoke sans a Southern drawl. As the law does not require a futile act, there was no need for further proceedings by this judge to determine whether the verdict was supported by the evidence.

*See Hardin v. City of Gadsden,* 821 F.Supp. 1446, 1450 (N.D.Ala.1993).

Appellee contends that the foregoing passage constituted a determination by the district court that the grant of a new trial also was warranted by jury bias.[3] We disagree. It is true that "[s]ince an order granting a new trial is an interlocutory order, the district court has plenary power over it" and may therefore "reconsider, revise, alter or amend" that order at any time prior to final judgment. *Gallimore v. Missouri Pacific R.R. Co.,* 635 F.2d 1165, 1171 (5th Cir. Unit A Feb. 1981)[4] (quoting 6A James W. Moore, *Moore's Federal Practice* ¶ 59.13[2] at 59-258-59 (2d ed. 1979)); *see also McIsaac v. Didriksen Fishing Corp.,* 809 F.2d 129, 135 (1st Cir.1987) (district court may reassess prior reasons for grant of new trial). Additionally, if the district court intends to grant a new trial on certain grounds, but fails to include those

---

[3]Ms. Houseal was African-American; Ms. Hardin, the administratrix of her estate, is African-American as well.

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent decisions of the Fifth Circuit, including Unit A of that circuit, handed down prior to October 1, 1981.

grounds in the order by oversight or omission, the court may correct the error on its own initiative under Fed.R.Civ.P. 60(a). *See* 6A James W. Moore & Jo D. Lewis, *Moore's Federal Practice* ¶ 59.11 at 59-257 (2d ed. Supp.1994). The district court, however, neither issued an order explicitly reconsidering the grounds for its prior order, nor acted to correct a clerical error. Rather, its remarks are at best ambiguous, as the last sentence of the quoted passage appears to reaffirm the trial court's prior conclusion that a new trial was warranted due to insufficiency of the evidence. Accordingly, we decline appellee's invitation to view the new trial order as resting on an alternative finding of jury bias.[5]

## B.

We review the district court's grant of a new trial for abuse of discretion. *Williams v. City of Valdosta,* 689 F.2d 964, 973 (11th Cir.1982). The range of discretion afforded to the district court is smaller, however, when, as here, the district court orders a new trial because the jury verdict was "contrary to the great weight of the evidence." *Id.* at 974-75 & n. 8. When "the trial involves simple issues, highly disputed facts, and there is an absence of "pernicious occurrences'," *id*. at 974, application of this more rigorous standard of review "protect[s] a party's right to a jury trial," and ensures that the district court does not simply substitute its own credibility choices and inferences for

---

[5]Because we construe the district court's order in this manner, we express no opinion on whether a finding of jury bias may be predicated solely on the district court's visual observation of the demeanor of certain jurors during trial.

the reasonable choices and inferences made by the jury. *Redd v. City of Phenix City,* 934 F.2d 1211, 1215 (11th Cir.1991).[6]

### III.

In order to determine whether the jury verdict in the first trial was against the great weight of the evidence, we must first consider what the plaintiff was required to prove. To establish municipal liability under § 1983, Hardin needed to show that (1) Houseal's injury resulted from a constitutional violation, and (2) the City was responsible for that constitutional violation. *See Collins v. City of Harker Heights,* 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). Plaintiff's theory was that the City was deliberately indifferent to Houseal's need for mental health treatment, and that the delay in obtaining that treatment caused Houseal great emotional pain amounting to "cruel and unusual punishment" under the Eighth Amendment.[7] *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (deliberate indifference to prisoner's serious medical needs can violate Eighth Amendment); *Mandel v. Doe,* 888 F.2d 783, 787-88

---

[6]A more deferential standard of review is appropriate, on the other hand, if the district court's new trial order is precipitated by jury misconduct or other prejudicial trial events that "contaminate" the jury's deliberative process. *See Williams,* 689 F.2d at 974-75 n. 8; *Redd,* 934 F.2d at 1215.

[7]At trial, Hardin at times appeared to contend that the relevant constitutional violation was the City's failure to prevent Houseal's suicide. On appeal, however, Hardin explicitly has abandoned this contention, and no longer asserts that Houseal's death was a suicide. Rather, appellee now argues that the relevant injury for the purpose of the federal claim was not Houseal's death but rather her mental anguish during confinement. Because it does not change the outcome of our analysis in this case, we evaluate the sufficiency of the evidence in support of the first jury verdict in light of the latter theory of the case.

(11th Cir.1989) (same).  To prove deliberate indifference, Hardin needed to demonstrate that the relevant City personnel acted with subjective recklessness, i.e. that their conduct was very unreasonable in light of a known risk that delay in mental health treatment would cause Houseal mental anguish.  *See Farmer v. Brennan,* --- U.S. ----, ---- - ----, 114 S.Ct. 1970, 1978-79, 128 L.Ed.2d 811 (1994).[8]

By contrast, on the Alabama wrongful death claim, Hardin needed only to demonstrate that City personnel were negligent in their treatment of Houseal.  *See* Ala.Code § 6-5-410(a) (1993). Furthermore, for the purpose of the state-law claim, the relevant injury was not the decedent's emotional pain resulting from the delay in obtaining mental health treatment;  rather, the pertinent focus was on the fact of death itself.  The question for the jury, therefore, was whether the City officers' conduct in delaying

---

[8]Under the second *Collins* factor, Hardin also needed to show that the City was responsible for any purported constitutional violation.  Such municipal liability under § 1983 may not be predicated upon a *respondeat superior* theory;  rather, "recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality'—acts that the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478-80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).  Because we conclude that a determination by the jury that City personnel were not deliberately indifferent to Houseal's mental health needs would not have been against the great weight of the evidence, we need not consider whether any deficient City policy existed.  *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations may have *authorized* [a constitutional violation] is quite beside the point.")  (emphasis in original);  *Williams v. Borough of West Chester,* 891 F.2d 458, 466-67 (3rd Cir.1989) (where jailers were not deliberately indifferent to risk of suicide by prisoner, unnecessary to consider existence of deficient municipal policy).

treatment was unreasonable in light of the risk that Houseal would asphyxiate by ingesting soap.[9]

The first jury's verdict on the wrongful death claim was not against the great weight of the evidence. Even if many lower-level City police officers and jailers knew, by the afternoon of May 30, that Ms. Houseal was mentally ill and required mental health treatment, the reasonableness of the one-and-a-half day delay in obtaining that treatment must still be evaluated in light of the foreseeability of the risk of death by asphyxiation. *See Mobile & O.R. Co. v. Williams,* 221 Ala. 402, 129 So. 60, 64 (1931) ("Reasonable care requires conduct commensurate with the danger to be reasonably apprehended."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 31 at 169-71 & n. 15 (5th student ed. 1984) (" "Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.' ") (quoting *Stewart v. Jefferson Plywood Co.,* 255 Or. 603, 469 P.2d 783, 786 (1970)).

At the first trial, plaintiff's own expert, Dr. Lindquist, testified that his research revealed only two prior instances nationwide (in a 400 person sample) of self-inflicted jail inmate death due to ingestion of foreign objects. Dr. Lindquist further

_____

[9]The parties agree that, under Alabama law, the City's liability for the negligence of employees acting in the line of duty may be predicated on *respondeat superior.* *See* Ala.Code § 11-47-190 (1992); *City of Birmingham v. Benson,* 631 So.2d 902, 905 (Ala.1993) (§ 11-47-190 imposes *respondeat superior* liability on municipalities for employee negligence); *see also City of Birmingham v. Moore,* 631 So.2d 972, 973-74 (Ala.1994) (city held vicariously liable for negligence of jailer in treating seizure-prone prisoner).

conceded that, when he was deposed prior to trial, he had known of no such instances; the two instances were uncovered by his post-deposition research. Furthermore, Dr. Cruit, the ER physician, testified that the human "gag reflex" would normally prevent asphyxiation from an object lodged in the hypopharynx, as the reflex should cause involuntary expulsion of that object. Although Dr. Embry, the state pathologist, testified that he did not think the "gag reflex" would prevent such asphyxiation, and that Houseal's prior consumption of fecal matter made ingestion of foreign objects foreseeable, the jury was certainly entitled to conclude, in the face of the experts' disagreement, that the risk of death by asphyxiation was quite attenuated (and that the delay in treatment therefore was not unreasonable). *See Redd,* 934 F.2d at 1215 ("When there is some support for a jury's verdict, it is irrelevant what the [Court of Appeals] or the district judge would have concluded," and grant of new trial is improper.).[10]

If the jury's conclusion that City personnel[11] were not

---

[10]Furthermore, Mr. Owens, the social worker who examined Ms. Houseal, testified that an involuntary commitment procedure, involving the retention of a guardian ad litem and the filing of a probate petition in state court, could itself have taken three to four days. The jury could have concluded that City officers were aware of how long such involuntary commitment proceedings could take, and that their one-and-one-half day delay therefore was not unreasonable where, even if preliminary treatment had been obtained on May 30, Houseal could still have been in jail, and subject to the risk of asphyxiation, on the morning of June 1.

[11]We need not, and do not, address the question of whether any County officers may have acted unreasonably with respect to the risk of Ms. Houseal's death. Sheriff Hayes and Chief Raley settled with the plaintiff on the first day of trial, and neither their conduct nor that of any of their subordinates is directly at issue in this appeal.

negligent was not against the great weight of the evidence, then, on the facts of this case, the jury's conclusion that City personnel were not deliberately indifferent was a fortiori not against the great weight of the evidence. *See Farmer*, --- U.S. at ----, 114 S.Ct. at 1978 ("deliberate indifference describes a state of mind more blameworthy than negligence"). Although the claimed harm at issue in the state and federal counts was somewhat different, the conduct of City personnel to be evaluated by the jury was the same. The ultimate question the jury needed to answer, therefore, was also similar—was the period of delay in obtaining mental health treatment (very) unreasonable in light of the (known) risk of harm? In our view, the jury was entitled to conclude that the likelihood and magnitude of Ms. Houseal's mental anguish was not so great as to transmute that delay into "deliberate indifference."[12]

## IV.

For the foregoing reasons, we hold that the district court abused its discretion in ordering a new trial after the first jury verdict. Accordingly, we REVERSE the judgment entered upon the verdict from the second trial, and REMAND with instructions that

---

[12]We recognize that there was some trial testimony, albeit controverted, that Ms. Houseal was, perhaps on more than one occasion, physically assaulted by City police officers in her cell. If these events in fact took place, we strongly condemn such conduct. The plaintiff did not attempt, however, to predicate either of her claims directly on these incidents. Rather, to the extent that they were relevant at all, these events simply added to the totality of information available to the jury about the conditions of Ms. Houseal's confinement and the consequent reasonableness of the delay in obtaining mental health treatment. In our view, even in light of these occurrences, the first jury's verdict still was not against the great weight of the evidence.

the jury verdict from the first trial be reinstated.