United States Court of Appeals,

Eleventh Circuit.

No. 93-9183.

Brandon Joshua HANEY, by next friend, Guardian of his Property, Margean Haney; Dana Shaun the Estate of Dana Shaun Haney, by Margean Haney, Administratrix, Plaintiffs-Appellees-Cross-Appellants,

v.

CITY OF CUMMING; and Wayne Lindsey, in his capacity as Chief of Police for the City of Cumming, Defendants-Cross-Appellees,

Cumming Police Department; Sheriff's Department of Forsyth County; Roslyn Haygood; D.O. Dampier; Jeff Lowe, Defendants,

Forsyth County; Wesley Walraven, in his individual capacity and in his capacity as Sheriff of Forsyth County; Russell Matthews; Rusty Griffin, Defendants-Appellants-Cross-Appellees.

Nov. 27, 1995.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:90-01438-CV-JTC), Jack T. Camp, Judge.

Before KRAVITCH, Circuit Judge, and GODBOLD and MORGAN, Senior Circuit Judges.

MORGAN, Senior Circuit Judge:

The parties before us appeal the district court's ruling on summary judgment in a 42 U.S.C. § 1983 action arising from a prisoner suicide. For the reasons set forth below, we reverse the district court's denial of summary judgment with respect to the qualified immunity claims and dismiss the remaining issues for lack of appellate jurisdiction.

FACTUAL BACKGROUND

On April 20, 1989, police officers for the City of Cumming, Georgia, travelled to the local Days Inn hotel in response to a telephone call from the hotel manager, advising them that a room was being occupied by persons who had failed to pay for it. At the

hotel, the police arrested Dana Shaun Haney and Jacqueline Hunt for theft of services.  Both women were taken to the city jail where they were booked, during which time Hunt retrieved fifteen Xanax pills from her purse and swallowed them.[1]  Later in the afternoon, Police Chief Wayne Lindsey of the city police transferred Haney and Hunt to the Forsyth County jail.  While there, Hunt passed out and was taken to a local hospital.  The county deputies placed Haney in a detoxification cell.

The next morning, Russell Matthews, Chief Criminal Investigator for the Forsyth County Sheriff's Department, arrived at the county jail to speak with Haney.  Matthews was conducting an investigation into local physicians who reportedly have written excessive amounts of prescription drugs and thought Haney might have some useful information.  The two spoke for approximately thirty to forty-five minutes, during which time Haney expressed deep concern over Hunt's condition.  After making inquiries of the jailers, Matthews informed Haney that Hunt was in intensive care at the hospital and could not receive any visitors.

Upon the conclusion of her interview with Matthews, Haney was returned to the detoxification cell.  Shortly thereafter, officer Rusty Griffin, who was on duty at the jail that morning, found Haney standing on the toilet in her cell and noticed that she had torn up her mattress and pillow.  When Griffin questioned her about her conduct, Haney replied that she "might as well kill" herself.

---

[1]At the time of their arrests, both Haney and Hunt were high on intoxicants.  Hunt later admitted that she was not attempting suicide when she swallowed the Xanax pills.  Rather, she was merely trying to keep her "high" going because she knew it would be a long time before she would be able to take any other drugs.

Griffin then immediately located Matthews and brought him back to the cell to observe Haney, who was found crying in the corner.[2] After Matthews and Haney spoke for a while, she assured him that she would behave, but told him she wanted to be taken back to the city jail. Matthews and the county deputies made the necessary arrangements, and Haney was transferred to the city jail shortly after noon.[3] Unfortunately, no one from the county informed the officers at the city jail that Haney had mentioned suicide, and Haney was placed in an unsupervised cell. Within an hour, a dispatcher at the city jail found Haney hanging from a horizontal bar in her cell with a sheet around her neck. She was not breathing. Attempts were made to revive her, but they proved unsuccessful. Prior to Haney's death, there had never been a suicide at either the Forsyth County or Cumming city jail.

As a result of the suicide, Margean Haney, as next friend of Haney's minor son, Brandon Joshua Haney, and as administratrix of Haney's estate (collectively hereinafter "Plaintiffs"), brought suit under federal and Georgia law against the City of Cumming, Cumming Police Chief Wayne Lindsey, Forsyth County, Forsyth County Sheriff Wesley Walraven, Inspector Russell Matthews, and Officer Rusty Griffin (collectively hereinafter "Defendants"). On March 18, 1991, the district court compelled the Plaintiffs to respond to the discovery requests filed by the various Defendants. When the

---

[2]Griffin claims he informed Matthews that Haney had mentioned killing herself, but Matthews denies that anyone ever told him that she was contemplating suicide.

[3]During the transfer from the county jail, Haney appeared to be in good spirits as she was laughing, talking, smoking, and drinking coffee.

Plaintiffs failed to comply, the district court dismissed their complaint. The district court set aside its dismissal on October 23, 1991, pursuant to FED.R.CIV.P. 60(b), on the Plaintiffs' counsel's testimony that he had failed to inform his clients of the court's discovery order.

After the completion of discovery, the Defendants filed motions for summary judgment. The district court granted summary judgment in favor of the City of Cumming and Chief Lindsey, finding they had no special reason for concern about Haney's condition when she was transferred to the city jail. The district court denied summary judgment on qualified immunity in favor of Matthews and Griffin, finding that Haney's constitutional rights at issue were clear at the time of her incarceration and that genuine factual questions remained regarding the propriety of their conduct. Summary judgment was granted in favor of Forsyth County and Sheriff Walraven after the district court concluded that Griffin's training and the county's inmate transfer policy were not facially unconstitutional. Nevertheless, the district court denied summary judgment for Forsyth County and Walraven as to Matthews' training and discretion. Finally, summary judgment was granted in favor of all the Defendants on the state law claims after the district court found that the Plaintiffs had failed to adequately support such claims.

This appeal and cross appeal stem from the district court's rulings on summary judgment and its decision to reinstate the Plaintiffs' complaint pursuant to FED.R.CIV.P. 60(b). We address the necessary issues in the following discussion.

DISCUSSION

*A. Appellate Jurisdiction*

At the outset, we must determine our jurisdiction over these appeals since federal courts are courts of limited jurisdiction. *Winfrey v. School Board of Dade County,* 59 F.3d 155, 157 (11th Cir.1995). The primary issue presented to us for consideration is whether the district court erred in denying summary judgment for Matthews and Griffin with respect to their qualified immunity defense. A trial court's denial of qualified immunity at the summary judgment stage is immediately appealable. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985); *McCoy v. Webster,* 47 F.3d 404, 406 (11th Cir.1995). Thus, we have jurisdiction over Matthews' and Griffin's appeal, but only insofar as the district court's order turns on purely legal issues. *Johnson v. Jones,* --- U.S. ----, ----, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995); *Babb v. Lake City Community College,* 66 F.3d 270 (11th Cir.1995).

Our jurisdiction over the remaining claims presented to us on appeal is a more problematic question.[4] This case is one that involves multiple claims and multiple parties, and the district court's order on summary judgment disposed of some but not all of the claims and parties.

_____

[4]The Plaintiffs and the Forsyth County Defendants argue that it is proper for us to exercise appellate jurisdiction over the remaining issues. The City of Cumming Defendants simply state that they do not oppose such jurisdiction. Thus, no party objects to our hearing these matters. Nevertheless, jurisdiction cannot be conferred upon us by consent of all parties involved. We must decide the validity of our own authority to consider a matter even in the absence of objection from an interested party.

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

FED.R.CIV.P. 54(b); *see generally* 10 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE §§ 2653-2661 (1983 & Supp.1995). An order that disposes of some but not all claims may be appealable if it is so certified by the district court pursuant to Rule 54(b). Absent such a certification, as is the case here, the district court's ruling is merely interlocutory and not an appealable final decision over which we have jurisdiction. 28 U.S.C. § 1291; *see Mesa v. United States,* 61 F.3d 20 (11th Cir.1995); *Penton v. Pompano Constr. Co.,* 963 F.2d 321 (11th Cir.1992); CHARLES A. WRIGHT, LAW OF FEDERAL COURTS § 102, at 756 (5th ed. 1994).[5]

The Plaintiffs and the Forsyth County Defendants argue that we have the authority to exercise appellate jurisdiction over the remaining claims since they are pendent to the qualified immunity appeal. It is true that in the past we have used our discretion to exercise pendent jurisdiction over additional issues when an appeal appeared before us on the qualified immunity question. *See, e.g., Kelly v. Curtis,* 21 F.3d 1544 (11th Cir.1994). Earlier this year, however, the Supreme Court rejected our practice of exercising such

---

[5]We note that three exceptions to the final judgment rule exist: (1) the collateral order doctrine, (2) the doctrine of practical finality, and (3) the exception for intermediate resolution of issues fundamental to the merits of the case. *Lockwood v. Snookies, Inc. (In re F.D.R. Hickory House, Inc.),* 60 F.3d 724, 725 (11th Cir.1995). None of these exceptions apply to the issues remaining on this appeal.

discretionary jurisdiction in *Swint v. Chambers County Commission,* --- U.S. ----, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), finding our purported pendent party appellate jurisdiction to be nonexistent under these circumstances.[6] In view of *Swint,* we must conclude that our immediate authority to review the district court's denial of Matthews' and Griffin's qualified immunity defense does not include the authority to review at once the questions regarding the denial or granting of summary judgment to the other Defendants.[7] *See, e.g., L.S.T., Inc. v. Crow,* 49 F.3d 679, 683 n. 8 (11th Cir.1995). Thus, the only issue we now consider on appeal pertains to Matthews' and Griffin's qualified immunity.

### B. Qualified Immunity

The Plaintiffs' complaint alleges that Matthews' and Griffin's failure to prevent Haney's suicide violated her civil rights as guaranteed by the Eighth and Fourteenth Amendments. Both Matthews and Griffin claimed the protection of qualified immunity, but the district court denied that argument at summary judgment. Since issues of qualified immunity present questions of law, we review the district court's decision *de novo.* *Jordan v. Doe,* 38 F.3d 1559, 1563 (11th Cir.1994).

---

[6]In *Swint,* the Supreme Court suggested that appellate review might exist where an otherwise nonappealable question is "inextricably interwoven" with an issue properly before us. *Id.* at ----, 115 S.Ct. at 1212. On the facts of this case, however, we find that no such jurisdiction exists since the issues remaining on appeal are not inextricably interwoven with the qualified immunity defense asserted by Matthews and Griffin.

[7]Likewise, we lack appellate jurisdiction to consider now the Defendants' argument that the district court erred by reinstating the Plaintiff's complaint pursuant to FED.R.CIV.P. 60(b). Such an order is interlocutory in nature and unreviewable absent a final judgment.

To prevail in a prisoner suicide case, a plaintiff must prove that a defendant displayed deliberate indifference to a prisoner's mental condition and the likely consequences of that condition. *Tittle v. Jefferson County Commission,* 10 F.3d 1535, 1539-40 (11th Cir.1994) (discussing governmental liability and not individual liability). The deliberate indifference standard is a subjective one, requiring that a defendant know of and disregard an excessive risk to an inmate's health or safety. *Farmer v. Brennan,* --- U.S. ----, ----, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); *Hardin v. Hayes,* 52 F.3d 934, 939 (11th Cir.1995). Nevertheless, qualified immunity will shield from civil damages individual government officials who perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Belcher v. City of Foley,* 30 F.3d 1390, 1395 (11th Cir.1994); *see generally* Kit Kinports, *Qualified Immunity in Section 1983 Cases: The Unanswered Questions,* 23 Ga.L.Rev. 597, 600-07 (1989). Should the plaintiff fail to show that the law was clearly established at the time in question, the individual defendant is entitled to qualified immunity. *Belcher,* 30 F.3d at 1400.

In denying Matthews' and Griffin's claim of qualified immunity at summary judgment, the district court relied heavily on our decision in *Waldrop v. Evans,* 871 F.2d 1030 (11th Cir.1989), as evidence that the law in 1989 was established that officers who fail to notify competent authorities and take appropriate action

regarding an inmate's psychological needs can be liable under section 1983. *Waldrop* was an action against doctors at a state correctional facility stemming from a prisoner suicide. Last year in *Belcher,* however, we held that *Waldrop* did not clearly establish officer liability because it pertained only to the issue of physician liability.[8] *Belcher,* 30 F.3d at 1399-1400. Like the case currently before us, *Belcher* involved a suit against police officers in the wake of a prisoner suicide. Specifically, we stated in *Belcher* as follows:

> *Waldrop* could not have clearly established the law governing the conduct of police officers in positions materially similar to Officer Roberson's or any of the other defendant police officers in this case, because *Waldrop* addressed the liability of a physician.... The defendants in this case are not physicians and are not responsible for meeting the medical and psychiatric needs of inmates in a mental health evaluation facility. They are police officers whose primary responsibility is to enforce laws and to arrest persons suspected of violating laws in their community. *Because the circumstances in Waldrop are not materially similar to the circumstances in this case, Waldrop did not clearly establish the law applicable to this case.*

*Id.* (emphasis added). We further concluded in *Belcher* that case law other than *Waldrop* failed to establish the law governing the conduct of officers under the circumstances in question. *Id.* at 1401.

Both Matthews and Griffin are in a situation materially similar to the defendants in *Belcher.* They are not physicians and thus were not responsible for meeting the psychiatric and medical needs of Haney at the time she was in the jail. Having found in *Belcher* that case law as of 1991 did not clearly establish

---

[8]We note that the district court did not have the benefit of our *Belcher* decision at the time it ruled on the qualified immunity defense.

constitutional or statutory rights in such a situation, it is clear that there also were no such rights at the time of Haney's 1989 suicide. Contrary to the district court's conclusion, neither *Waldrop* nor other case law clearly establish the law that is applicable to this case. Accordingly, the district court erred when it denied qualified immunity for Matthews and Griffin.

CONCLUSION

For the reasons stated herein, the district court's denial of qualified immunity to Matthews and Griffin is REVERSED. All other issues brought before us are hereby DISMISSED for lack of appellate jurisdiction.

REVERSED in part and DISMISSED in part.