[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13507

_____

D.C. Docket No. 4:07-cv-00428-WCS

DARREL CUMMINGS,

Plaintiff - Appellant,

versus

DEPARTMENT OF CORRECTIONS,
et al.,

Defendants,

MATTHEW T. WHIDDON,
Sgt.,
TAYLOR CI WARDEN,
R.L. DURHAM,
Officer,
MATT FOUNTAIN,
Officer,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 8, 2014)

Before TJOFLAT, WILSON, and RIPPLE,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

This case is about a sleeping juror.  Darrel Cummings filed a complaint against four prison officials at the Taylor Correctional Institution, alleging violations of his First, Eighth, and Fourteenth Amendment rights and seeking money damages under 42 U.S.C. § 1983.[1]  The case was tried to a jury before a Magistrate Judge.[2]  During the afternoon of the first day of trial, one of the jurors fell asleep off-and-on for two hours.  The Magistrate Judge questioned the juror in camera, with neither party present, and concluded that the juror could remain on the jury.  Neither party objected to this decision, nor did they request that the Magistrate Judge explain his ruling.

---

[*] Honorable Kenneth Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

[1] 42 U.S.C. § 1983, provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[2] "Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c).

2

The jury returned a verdict for the defense, at which point Cummings filed a motion for a new trial, arguing that the sleeping juror should have been removed from the jury.  The Magistrate Judge granted the motion.  The defendants moved the court to reconsider the ruling, arguing that Cummings waived any objection to the court's decision allowing the juror to remain on the jury.  The Magistrate Judge granted the motion for reconsideration and denied Cummings's motion for a new trial.  Cummings appeals the decision.  We affirm.

I.

A.

In his fifth amended pro se complaint,[3] Cummings alleged that at 5:00 a.m. on September 19, 2007, he was in the dining hall of the Taylor Correctional Institution with twenty-three other inmates when Sergeant Matthew Whiddon told the inmates to "get [your] Goddamn asses up and move," adding, "You Muslim son of bitches think you['re] special."  Doc. 88, at 5 (internal quotation marks omitted).  According to the complaint, supervisors in the kitchen had authorized Cummings and the other inmates to use the kitchen for eating and prayer during the Islamic month of Ramadan.[4]  Sergeant Whiddon continued to verbally berate

---

[3] Cummings filed his initial pro se complaint on October 4, 2007.  He filed a fifth amended complaint, on which the case was tried, on February 17, 2009.

[4] During the month of Ramadan, Muslims are obligated to fast during the daylight hours.

3

Cummings and forced him to face the wall. While Cummings faced the wall, Sergeant Whiddon allegedly slammed his shoulder into Cummings, tightly handcuffed one of Cummings's wrists, and then pulled up. According to Cummings, this action caused permanent injury to his arm and lower back. Cummings filed multiple informal and formal grievances with the jail, which, according to Cummings, led to more assaults and verbal abuse at the hands of Sergeant Whiddon, as well as Officers R.L. Durham and Matt Fountain.

Cummings's complaint raised three claims under 42 U.S.C. § 1983. First, Cummings alleged that the defendants denied his First Amendment right to criticize the state without retaliation.[5] Second, Cummings claimed that he was denied his right to be free from cruel and unusual punishment, in violation of the Eighth Amendment.[6] Finally, he claimed that the defendants were deliberately indifferent to his health and safety, also in violation of the Eighth Amendment. Cummings named as defendants Warden Dufie Harrison, Sergeant Matthew

---

[5] The First Amendment is made applicable against the states through the Fourteenth Amendment's due process clause. Schneider v. New Jersey, 308 U.S. 147, 160, 60 S. Ct. 146, 150, 84 L. Ed. 155 (1939).

[6] The Eighth Amendment prevents the government from inflicting "cruel and unusual punishment," U.S. Const. amend. VIII, and is made applicable to the States via the Due Process Clause of the Fourteenth Amendment, Wilson v. Seiter, 501 U.S. 294, 296, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991).

Whiddon, Officer R.L. Durham, and Officer Matt Fountain.[7]  Defendant Matt Fountain answered the fifth amended complaint and denied liability.[8]

B.

Trial began on March 28, 2011.  Cummings represented himself pro se; Senior Assistant Attorney General Joe Belitzky and Assistant Attorney General Mark J. Hiers represented the defendants.  The case was tried to a jury of seven before the Magistrate Judge.  During the afternoon of the first day of trial, the Magistrate Judge noticed one of the jurors—Juror Linn—appeared to be sleeping, whereon the following occurred in the absence of the jury:

> THE COURT: I would like to take a break at this point.  We'll take a 15-minute break.
>
> (A recess was taken at 4:06 p.m.)
>
> Please have a seat.
>
> Counsel, would you come forward with Mr. Cummings?
>
> (Conference held at the bench.)
>
> THE COURT: Juror Number 1, Ms. [Linn], has slept for the last two hours.
>
> MR. CUMMINGS: She's been out of it.

---

[7] Prior to the parties' consent to the trial of the case before the Magistrate Judge, defendants Harrison, Whiddon, and Durham moved the District Court for summary judgment.  At the time the motion was filed, Fountain had not been served with the complaint.  The court denied the motion on February 7, 2010.

[8] The other three defendants had answered prior versions of Cummings's complaint, but they did not file an answer to the Fifth Amended Complaint

5

THE COURT: I don't think she's going to be sufficiently attentive to finish the trial.  The court reporter, my law clerk, the deputy clerk, have been watching, and I have repeated messages about her.  She's unable to stay awake.

I'm thinking we should excuse her at this point, because otherwise – that leaves us with only six, but I think that's the thing to do.

MR. BELITZKY: I rely on Your Honor's observation.

THE COURT: Have you noticed?

MR. CUMMINGS: I tried to wake her one time.

THE COURT: I hit the gavel, and I'm embarrassed to do that anymore.  So how should we do this?

MR. BELITZKY: She's the first lady?

THE COURT: I think I should clear the courtroom and ask her to – tell her I need to excuse her for the record.

MR. BELITZKY: I think the alternate –

THE COURT: There are no alternates.  They are all jurors.

MR. BELITZKY: Okay.

THE COURT: There are no alternates.  We are just down to six; and, if we lose one more, we have to try the case again.

I think what I will do is bring her in chambers.

MR. BELITZKY: That sounds appropriate, Your Honor.

THE COURT: My chambers right here.  Judge Mickle's chambers.  Okay.

(A recess was taken at 4:08 p.m.)

Doc. 224, at 104–05.

6

The Magistrate Judge then called Juror Linn into chambers. Neither Cummings nor defense counsel was present. The Magistrate Judge confronted the juror about his concern that she had missed important testimony:

THE COURT: Sorry. I hate to ask you, but –

JUROR LINN: Where would you like me to sit?

THE COURT: Just right here.

JUROR LINN: What are you concerned about?

THE COURT: Well, what I'm concerned about is that during the last two hours that you have been nodding off and sleeping, and I've been there.

JUROR LINN: No. I have been taking – I haven't really been sleeping. Do you want me to tell you what's been stated? It may have looked like I've been sleeping.

THE COURT: Your head is down and –

JUROR LINN: Yes. My head will sometimes go down. It's an old teacher habit.

THE COURT: Uh-huh.

JUROR LINN: Have you noticed that I've also been taking copious notes?

THE COURT: No, I haven't.

JUROR LINN: Well, I have.

THE COURT: So do you feel that you can continue?

JUROR LINN: Oh, absolutely. Absolutely.

THE COURT: All right.

7

JUROR LINN: If I did not feel I could not, I would immediately tell you that.

THE COURT: Okay.

JUROR LINN: Now, it's – I will not hesitate to tell you that there was one time [I] became cognizant that I might have gone to sleep for maybe 10 or 15 seconds, but that was about it.

THE COURT: Okay.  Well, I will hold – would you do me this favor?

JUROR LINN: Of course.

THE COURT: No teacher tricks.

JUROR LINN: O[h] darn it.

THE COURT: Don't close your eyes, don't lower your head, keep your eyes open, so I can see for sure you're there.

JUROR LINN: All right.

THE COURT: And there is – there's no embarrassment here, but I do – I have to finish the trial knowing that every juror was attentive; and, if I don't do it that way with every juror attentive, I have to do another trial.  I have to do it all over again.

JUROR LINN: Oh, we don't want you to do that.  I will keep my eyes open.  It is a teacher trick, by the way.

THE COURT: Me neither.  So your teacher trick, don't trick me.

JUROR LINN: All right.  I thought you were going to reprimand me for my – when we returned after lunch, and you made the statement about it being wet.

THE COURT: No, no.  But I am going to need to see you make eye contact on a regular basis, okay?  That's right, I'm going to be looking –

8

JUROR LINN: You want me to look at you, not the witness or the attorney, but you?

THE COURT: No.  I just want you to make sure that you're not –

JUROR LINN: I'm here.  By the way, I –

THE COURT: And if I hear you snore –

JUROR LINN: Oh, no.  I was about to say, if I were to become unconscious or sleeping, that is exactly what I do.

THE COURT: Okay.

JUROR LINN: But I appreciate it, that you're sensitive to that.  You're doing a great job, in case no one has told you.

THE COURT: Okay.  I will not –

JUROR LINN: Don't worry about that.

THE COURT: I will not, but, again, I will have no choice, if –

JUROR LINN: My clothes are still wet.

THE COURT: – your eyes are down, I will have no choice but to excuse you.

JUROR LINN: I understand that.

THE COURT: Okay.

JUROR LINN: That's why I'm drinking hot water.  Should I tell them why I was in here?

THE COURT: No, you shouldn't.  You're not supposed to talk to them about the case.

(Conference concluded at 4:14 p.m.)

Doc. 212, at 2–5.

9

The Magistrate Judge returned to the courtroom, where he informed the parties that he had "decided to take no action at this point on the matter that we just discussed." Doc. 224, at 105. Cummings did not object to the Magistrate Judge's decision, nor did the defense. Neither party asked the Magistrate Judge why, after indicating prior to interviewing Juror Linn that he would remove her, he changed his mind and allowed her to stay. Nor did they request leave to have the court reporter read her shorthand notes of the conversation between the Magistrate Judge and the juror or ask the Magistrate Judge to summarize the conversation. The trial then continued.

On the third day of trial, as the court broke for lunch, a different juror informed a court security officer that he knew the witness who had been testifying for the defense. They worked together at the Leon County Jail. The Magistrate Judge called the witness into the courtroom, whereupon he, Cummings, and defense counsel asked the juror whether he could be impartial. The juror indicated that he had formed a positive opinion of the witness through their professional dealings but said he could be unbiased. The Magistrate Judge concluded that the juror should be excused, and he was. The defense objected, but the Magistrate Judge overruled the objection. The trial continued with six jurors.

C.

The jury returned a verdict for the defense.  The sleeping juror served as the foreperson of the jury.

Pursuant to Federal Rule of Civil Procedure 59,[9] Cummings filed a motion for a new trial, arguing that the Magistrate Judge should have excused Juror Linn as he indicated he would before meeting with the juror in camera.  Had Linn been dismissed, the jury would have fallen to five people after the juror who knew the witness was dismissed, which Cummings argued would have required the Magistrate Judge to declare a mistrial.  The defendants opposed Cummings's motion, arguing that the court was within its discretion to retain Juror Linn and suggesting that Cummings waived his argument by not seasonably objecting before the trial resumed with Linn in the jury box.

On May 26, 2011, the Magistrate Judge granted Cummings's motion for a new trial.  The court concluded that the juror had in fact fallen asleep, missed parts of Cummings's case that, in hindsight, the court recognized were critical, and, as

---

[9] Federal Rule of Civil Procedure 59 provides, "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1).

11

such, could not remain true to her oath to conscientiously and fairly decide the case.

The defendants moved the court to reconsider its decision granting a new trial. Specifically, they noted that Cummings did not object at the time the Magistrate Judge informed the parties that he would not dismiss the sleeping juror. Therefore, Cummings waived any right to raise the issue in a motion for a new trial. Despite Cummings's arguments against reconsideration, the Magistrate Judge granted the defendants' motion for reconsideration and denied Cummings's motion for a new trial after agreeing that he had waived any argument about the sleeping juror by failing to contemporaneously object to her remaining on the jury. After the court entered judgment for the defendants in accordance with the jury's verdicts, Cummings appealed, challenging the Magistrate Judge's order denying his motion for a new trial.

## II.

On appeal, Cummings asserts multiple errors, all based on the court's decision allowing Juror Linn to remain on the jury. First, he claims that the court abused its discretion by not informing the parties of the details of the in camera conversation it had with Juror Linn. Second, he argues that the court abused its discretion by failing to dismiss the juror. Third, he contends that the court abused its discretion by being overly concerned about the possibility of a mistrial if the

12

jury fell below six jurors. And finally, he asserts that the court abused its discretion in granting the defendants' motion for reconsideration and denying his motion for a new trial.

Cummings did not present the first three objections to the Magistrate Judge. "This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation marks omitted).[10] Because he failed to contemporaneously object, Cummings has waived any argument regarding the Magistrate Judge's handling of the sleeping juror and his decision to allow her to remain on the jury.

That leaves us only with Cummings's fourth argument: the Magistrate Judge erred in granting the defendants' motion for reconsideration. Cummings argues that the Magistrate Judge should not have granted the motion after finding in the earlier order granting a new trial that he was denied a fair trial because of Juror

---

[10] Although Cummings represented himself at trial, his pro se status does not absolve him of the requirement that he object to the Magistrate Judge's ruling. As the Fifth Circuit explained:

> The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law. One who proceeds pro se with full knowledge and understanding of the risks involved acquires no greater rights than a litigant represented by a lawyer, unless a liberal construction of properly filed pleadings be considered an enhanced right. Rather, such a litigant acquiesces in and subjects himself to the established rules of practice and procedure.

Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. Nov. 1981) (per curiam) (citations omitted).

13

Linn's conduct.  He further contends that because the Magistrate Judge was aware that Juror Linn slept through a portion of the trial, he was not required to object when she was allowed to remain on the jury.

First, we must determine whether the Magistrate Judge abused his discretion by granting the motion for reconsideration.  See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009) ("A district court has sound discretion whether to alter or amend a judgment pursuant to a motion for reconsideration, and its decision will only be reversed if it abused that discretion."); see also Hardin v. Hayes, 52 F.3d 934, 938 (11th Cir. 1995) ("[A]n order granting a new trial is an interlocutory order, the district court has plenary power over it and may therefore reconsider, revise, alter or amend that order at any time prior to final judgment." (citations omitted) (internal quotation marks omitted)).  "A motion for reconsideration cannot be used to 'relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'"  Id. (quoting Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005)).

Here, the Magistrate Judge granted the defendants' motion for reconsideration because Cummings failed to contemporaneously object to his decision allowing Juror Linn to remain on the jury.  The defendants had raised Cummings's failure to object in their response to Cummings's motion for a new

14

trial, but the Magistrate Judge misapprehended the defendants' point at that time. On reconsideration, he determined that the defendants were correct and that Cummings's had waived his objection. Because the defendants' motion for reconsideration did not present arguments the defendants could have presented in their opposition to Cummings's motion for a new trial, we cannot say that the Magistrate Judge improperly exercised his discretion in granting the motion.

Having concluded that the Magistrate Judge did not abuse his discretion in granting the defendants' motion for reconsideration, we must determine whether his denial of Cummings's motion for a new trial was proper. "We review a district court's denial of a motion for a new trial for an abuse of discretion." St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1200 n.16 (11th Cir. 2009).

Our decision in United States v. Bolinger, 837 F.2d 436 (11th Cir. 1988), squarely forecloses Cummings's argument that the Magistrate Judge committed an error of law by granting the motion for reconsideration and denying his motion for a new trial. In Bollinger, we said,

> A motion for new trial based on juror misconduct is a form of new trial motion for newly discovered evidence. As such, the motion must be supported by proof that the evidence of misconduct was not discovered until after the verdict was returned. In the particular context of juror misconduct, this rule serves to ensure that the trial court is given every available opportunity to attempt to salvage the trial by ridding the jury of prejudicial influences. Thus, where the

15

> defendant or defense counsel knows of juror misconduct or bias before the verdict is returned but fails to share this knowledge with the court until after the verdict is announced, the misconduct may not be raised as a ground for a new trial.

Id. at 439.  Cummings argues that Bolinger is distinguishable because in the present case the Magistrate Judge was aware of the juror misconduct prior to the return of the jury's verdicts, whereas in Bolinger the court was not.  But that distinction is not material to the larger takeaway of Bolinger: a motion for a new trial is not a vehicle for sandbagging an opposing party after the jury returns an unfavorable verdict.

As the Magistrate Judge explained, parties are free to waive most trial errors in the interest of trial strategy, and Cummings's failure to object could have been such a strategy.  Cummings was aware that Juror Linn appeared to be sleeping, or at the very least was inattentive.  He should have objected when the Magistrate Judge permitted her to remain on the jury.  The Magistrate Judge explained in his order granting the defendants' motion for reconsideration that had either party objected at trial, he would have been squarely confronted with the issue and probably would have dismissed Juror Linn.  Because Cummings was aware of Juror Linn's purported misconduct and declined to object to her retention on the jury, he cannot now "get a second bite of the apple" after the jury returned an

16

unfavorable verdict.  Garcia v. Murphy Pac. Marine Salvaging Co., 476 F.2d 303, 306 n.2 (5th Cir. 1973).[11]

### III.

The judgment of the District Court is, therefore, AFFIRMED.

SO ORDERED.

---

[11] Cummings does not argue that the Magistrate Judge's denial was based on a clearly erroneous factual finding.  And our review of the record confirms that it was not.