[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13566

Non-Argument Calendar

_____

JOSEPH SMITH,

Plaintiff-Appellee,

*versus*

MARK SOHN,
individually,
SHAUN JAMES,
individually,
ANDREW BERBEN,
individually,
CORY HENRY,
individually,

2                    Opinion of the Court                    23-13566

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-80590-RS

_____

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

While conducting a traffic stop, officers employed a dog sniff and subsequently searched Joseph Smith's car.  Smith brought suit against the officers, alleging illegal search and seizure along with several other claims.  The district court denied qualified immunity for the officers as to the illegal search and seizure claims.  Because we agree that there is a genuine dispute of material fact about whether probable cause justified the search, we affirm.

**I.**

At 12:50 pm, Defendants Officers Shaun James and Andrew Berben stopped a car for speeding.  The officers approached the vehicle and noticed that the car had illegally tinted windows.[1]  The officers asked the driver for his driver's license, proof of insurance,

_____

[1] Florida law limits the extent to which vehicle windows may be tinted.  Fla. Stat. § 316.2953.

and registration, all of which he provided. The officers noticed that the vehicle was registered to Joseph Smith, but that the driver's license was for Joseph Matthew Avrus. When officers questioned the driver about this discrepancy, he provided a second driver's license—this time with the name "Joseph Smith." The driver, Smith, explained that he had recently legally changed his name and was told to carry both licenses with him.

This interaction understandably raised the officers' suspicions, and they asked Smith if he had been smoking marijuana or otherwise had any drugs, weapons, or bombs. Smith initially responded in the negative, but then said, "I am not going to say anything to incriminate myself." The officers responded by asking to search Smith's car, but he declined. According to the officers, Smith acted nervous during this entire encounter. At 12:58 pm, the officers called for two additional officers, Cory Henry and Mark Sohn, as backup. At 1:02 pm, Officer James began writing the first of two traffic citations, one for speeding and the other for illegal tinting.

Backup arrived by 1:06 pm. Officer Mark Sohn asked Smith if he would consent to a search of his car, and Smith again declined.[2] Officer Sohn then informed Smith that he would be conducting a dog sniff of the vehicle's exterior. Smith was

---

[2] For the remaining facts, we refer to Officer Sohn's dash camera footage of the scene.

instructed to step out of the car.  The officers conducted a pat down search, but found nothing.

The dog sniff lasted about two minutes, from 1:09 pm to 1:11 pm.  While the dog never gave a clear alert, Officer Sohn commented that it seemed interested in Smith's trunk.  Officer Sohn again requested consent to search Smith's car, to which Smith declined.

The officers proceeded to search Smith's entire car.  At about 1:16, pm, while the search was still ongoing, Officer James finished writing Smith's tickets.  The search of the trunk did not reveal any contraband.  But at 1:27 pm, after about 15 minutes of searching the car, officers found a bag containing controlled substances under the floorboards of the driver's seat.  Smith was arrested and later charged with several narcotics offenses.

Smith brought suit against all four officers, alleging illegal search and seizure, false arrest, malicious prosecution, and violations of due process.  The officers moved to dismiss these claims, which the district court granted in part with respect to the due process and state law malicious prosecution claims.  The officers then moved for summary judgment on the remaining claims based on qualified immunity.  The district court granted that motion as to the false arrest and federal malicious prosecution claims, but denied it as to the illegal search and seizure claims

against each officer. The officers appeal the denial of qualified immunity for the illegal search and seizure claims.[3]

## II.

"We review de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of Plaintiffs and then answering the legal question of whether Defendants are entitled to qualified immunity under that version of the facts." *Case v. Eslinger*, 555 F.3d 1317, 1324–25 (11th Cir. 2009) (emphasis and quotation omitted). When "video evidence is conclusive, witness testimony cannot be used to introduce a factual dispute." *Charles v. Johnson*, 18 F.4th 686, 692 n.1 (11th Cir. 2021).

## III.

"Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (quotation omitted).

On appeal, the officers argue that the district court erred in two ways. *First*, they say that the court wrongly concluded that they had unconstitutionally prolonged the traffic stop. *Second*, they dispute that they lacked probable cause to search Smith's vehicle.

---

[3] "A trial court's denial of qualified immunity at the summary judgment stage is immediately appealable." *Haney v. City of Cumming*, 69 F.3d 1098, 1101 (11th Cir. 1995).

We agree with the officers' first argument, but disagree as to the second.

## A.

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Traffic stops "may last no longer than is necessary" to address the infraction and any related safety concerns. *Id.* (quotation omitted). An officer may undertake activities unrelated to the traffic stop's mission, such as a dog sniff, but only if it does not prolong the stop. *Baxter v. Roberts*, 54 F.4th 1241, 1259 (11th Cir. 2022). So long as a dog sniff occurs during a lawful traffic stop while officers are still "conducting routine records checks and preparing the traffic citations," it does not prolong the stop. *United States v. Holt*, 777 F.3d 1234, 1257 (11th Cir. 2015).

We disagree with the district court's conclusion that the officers in this case unconstitutionally prolonged the stop. The district court's reasoning was based on Officer James's failure to deliver the citations to Smith until his arrest—nearly thirty-seven minutes after he was initially stopped.

That analysis, however, shifts the focus from the proper inquiry: whether the dog sniff began during the routine traffic stop procedures. Here, Officer James began writing Smith's two citations at 1:02 pm, and finished writing at 1:16 pm. The dog sniff occurred during that time, beginning at 1:09 pm and ending around 1:11 pm, when Officer Sohn claimed that the dog had detected odor from the trunk. Because the dog sniff occurred while Officer

James was still writing Smith's citations, it did not unconstitutionally prolong the stop.

**B.**

Under the "automobile exception," officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the search will produce evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 566, 569 (1991). "[P]robable cause arises when a drug-trained canine alerts." *See United States v. Tamari*, 454 F.3d 1259, 1265 (11th Cir. 2006) (quotation omitted). We have "rejected a stricter rule requiring a final response, indication, or alert for a drug dog to be sufficiently reliable." *United States v. Braddy*, 11 F.4th 1298, 1314 (11th Cir. 2021). The inquiry must instead focus on "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* at 1312.

We are skeptical that the officers had probable cause to search any part of Smith's car. To alert, the drug detection dog is supposed to "sit and stare at the source of odor." But the dog never did that. And although Officer Sohn states that subtle changes in the dog's behavior suggested an alert, the video does not reflect those changes.[4] Because there is a genuine dispute of material fact

---

[4] The officers also provided a declaration by a canine expert who stated that the dog's "alert was sufficient indication that narcotics were present in the subject vehicle." Missing from the record, however, is a report or curriculum vitae for the expert. The district court thus did not consider this evidence, and

8                    Opinion of the Court                    23-13566

as to whether the dog alerted, the officers are not entitled to qualified immunity.[5]

⋆    ⋆    ⋆

Although the officers did not unconstitutionally prolong the traffic stop, there is a genuine dispute of material fact as to whether they had probable cause to search Smith's car. We therefore affirm the district court's summary judgment order denying qualified immunity for the illegal search and seizure claims.

**AFFIRMED.**

---

neither do we. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007).

[5] Even if the dog provided a weak indication of odor from the trunk, that does not necessarily mean that the officers had probable cause to search the entire vehicle. *See Acevedo*, 500 U.S. at 580.